Exhibit A

**A STOCK COMPANY**



# EVANSTON INSURANCE COMPANY

4521 Highwoods Parkway
Richmond, VA

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**

**President**

MJIL 1000 06 10

Page 1 of 1



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

## CALIFORNIA SURPLUS LINES NOTICE (D-2)

**1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

**2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

**3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

**4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357 OR INTERNET WEB SITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.



# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described. We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;

- Information about your transactions with us, our affiliates, or others; and/or

- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or

- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law. We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.


*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files. A more detailed description of your rights and practices regarding such information is available upon request. Please contact your agent/broker for instructions on how to submit a request to us.



# Evanston Insurance Company

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICYHOLDER DISCLOSURE NOTICE OF CERTIFIED ACTS OF TERRORISM COVERAGE

Disclosure You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires the Insurer to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**Disclosure Of Premium**

Certified acts of terrorism coverage is provided for no additional premium.



# EVANSTON INSURANCE COMPANY

## FOR PROFIT MANAGEMENT LIABILITY POLICY DECLARATIONS

**Claims Made Coverage:** The coverage afforded by this policy only applies to **Claims** that are first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased.

**Notice:** If purchased pursuant to Item 5. below, the Insurer shall have the duty to defend covered **Claims**. **Claim Expenses** shall reduce the Limit of Liability and any applicable Retention under this policy, unless otherwise stated in an endorsement to this policy. Please read the policy carefully.

POLICY NUMBER:  MKLV5MML000039                    RENEWAL OF POLICY:  MKLM5MML000002

## IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES WITH THE PARENT COMPANY TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**Item 1. Parent Company and Address** (No., Street, Town or City, State, Zip Code)

Lifovum Fertility Management, LLC

135 S Rosemead Blvd

Pasadena, CA  91107-3955

**Item 2. Policy Period**

From 08/29/2018 to 08/29/2019, at 12:01 A.M. Standard Time at the address shown above.

**Item 3. Extended Reporting Period**

Additional Premium:  $                              Additional Period:

| (Percent of Annualized Premium Stated in Item 4 below) | Year of Interval |
|---|---|
| 100% | 1 |
| 150% | 3 |
| 175% | 6 |

**Item 4. Policy Premium**

███████      Payable at inception

Producer Number, Name and Address

210888
Monarch E&S Insurance Services, Inc.
40 West Cochran, Suite 203
Simi Valley, CA 93065

**Item 5. Coverage Schedule**

This policy includes only those Coverage Parts designated below by "X" as purchased. If a Coverage Part is not expressly designated as purchased, this policy does not include such Coverage Part.

| Coverage Part | Coverage Part Purchased | Coverage Part Limits of Liability | Coverage Part Retention and Coinsurance Percentage | Coverage Part Pending or Prior Date | Coverage Part Duty to Defend |
|---|---|---|---|---|---|
| A. Directors and Officers and Company Liability | ☒Yes | $ 1,000,000 Each **Claim** $ 1,000,000 Aggregate | Coinsurance Percentage 0% | | Yes |
| 1. Insuring Agreement A: Insured Person Liability | | | $ 0 Each **Claim** | 08/29/2017 | |
| 2. Insuring Agreement B: Company Reimbursement | | | $ 100,000 Each **Claim** | 08/29/2017 | |
| 3. Insuring Agreement C: Company Liability | | | $ 100,000 Each **Claim** | 08/29/2017 | |
| 4. Insuring Agreement D: Derivative Demand Investigation Costs | | Derivative Demand Investigation Costs Sublimit: $ 150,000 | | 08/29/2017 | |
| B. Employment Practices and Third Party Discrimination Liability | ☒Yes | Employment Practices Liability: $ 1,000,000 Each **Claim** $ 1,000,000 Aggregate | Coinsurance Percentage 0 % $ 250,000 Each **Claim** | 08/29/2017 | Yes |
| | | Third Party Discrimination Liability: $ 1,000,000 Each **Claim** $ 1,000,000 All **Claims** Wage and Hour Claims: Sublimit: Not Purchased | Coinsurance Percentage 0% $ 250,000 Each **Claim** | 08/29/2017 | Yes |
| C. Fiduciary Liability | ☒No | Not Purchased Voluntary Settlement Programs Sublimit: Not Purchased | Coinsurance Percentage | | |

No Retention shall apply to **Non-Indemnifiable Loss** incurred by **Insured Persons** under any Coverage Part, except as required by state law.

**Item 6. Coverage Parts Which Share an Aggregate Limit of Liability**

☐   A.  Directors and Officers and Company Liability

☐   B.  Employment Practices and Third Party Discrimination Liability

☐   C.  Fiduciary Liability

☒   D.  None

**Item 7. Combined Aggregate Limit of Liability**

| $2,000,000 | All **Loss** (including **Claim Expenses**) under all purchased Coverage Parts, combined. |

**Item 8. Other Coverage Extensions Limits**

A.  Additional **Claim Expenses** Policy Aggregate Limit of Liability (All purchased Coverage Parts): Not Purchased

B.  Additional **Non-Indemnifiable Loss** Aggregate Limit of Liability (Directors & Officers Coverage Part): $ 500,000

C.  Subpoena Limit (Directors & Officers Coverage Part): $ 150,000

D.  Limit for **HIPAA Claims** (Directors & Officers Coverage Part): $ 100,000

E.  Limit for **Dilution Claims** (Directors & Officers Coverage Part): $ 150,000

F.  Limit for **HIPAA Claims** and **COBRA Claims** (Fiduciary Liability Coverage Part): Not Purchased

G.  Limit for **PPACA Claims** (Fiduciary Liability Coverage Part): Not Purchased

H.  Limit for **Disclosure Provision Penalties** (Fiduciary Liability Coverage Part): Not Purchased

I.  Limit for **Settlor Capacity Claims** (Fiduciary Liability Coverage Part): Not Purchased

**Item 9. Forms and Endorsements**
Forms and Endorsements applying to the Coverage Part(s) made part of this policy at time of issue:

See MDIL 1001 08 10 attached.

**Item 10. Notices**

Notices required to be provided to the Insurer under this policy shall be by email, fax or mail addressed to:

<u>**CLAIM, POTENTIAL CLAIM AND LOSS NOTICES:**</u>

E-mail: newclaims@markelcorp.com
Fax: (855) 662-7535

Claims Service Center
MARKEL SERVICE, INCORPORATED
Ten Parkway North
Deerfield, Illinois 60015

<u>**ALL OTHER NOTICES:**</u>

Markel West Insurance Services (#0D95581)
21600 Oxnard Street, Suite 900,
Woodland Hills, CA  91367
Telephone:  (818) 595-0600
Fax:  (866) 730-2529

**These declarations, together with the General Terms and Conditions, Coverage Part(s) and any Endorsements(s), and any applications complete the above numbered policy.**

| 09/19/2018 | |
|---|---|
| **Countersignature Date** | *Kevin J. Oh* |
| | _____ |
| | AUTHORIZED REPRESENTATIVE |

# Risk Management for Markel Management Liability Policyholders

## EPL Hotline & Online Loss Control

## Jackson Lewis, LLP

As a Markel policyholder, you have access to a comprehensive loss control program to connect you with proactive and practical information for managing risks. Staffed by EPL attorneys, the hotline is managed by Jackson Lewis, LLP, one of the nation's largest and most respected employment law firms representing management in the defense of harassment, discrimination, wrongful discharge, and other workplace-related claims. In addition to the hotline, employers can utilize the Jackson Lewis web site as a resource for education, risk management publications, newsletters, and opt-in email notifications. Markel EPL insureds can attend Jackson Lewis seminars without charge. A list of breakfast seminar series, luncheons, and other programs presented at their 49 offices across the country is available at **www.jacksonlewis.com**.

Please call **866-758-6874** to access the EPL Hotline.

## HR Care®

**http://markel.hrcare.com**

Courtesy of Markel, HR Care gives your business the core resources needed to keep up with employment law issues. **As a Markel Employment Practices Liability policyholder, you are entitled to access all secure areas of HR Care at no charge. Read more about HR Care below!**

### HR Classroom

**As a Markel insured, you and your employees may also take FREE trainings from HR Classroom for staff and supervisors concerning Discrimination and Sexual Harassment Prevention**. Upon completion of a training course, you and your employees may print the Certificate of Completion showing that you have taken the training. Go to **http://markel.hrcare.com** to get started.

If you want to track employee completion, customize trainings, insert policies, use the LMS interface and features, customer service, and other features of HR Classroom, then you may purchase trainings and services from HR Classroom. **Note: For every 100 trainings purchased, you will receive 50 free as an insured of Markel!** If you would like to see the various training offered by HR Classroom, visit http://www.hrclassroom.com/content/courses.aspx.

If you have any questions about HR Care and HR Classroom, you can reach us at:

**Curtis Communications, Inc.**
1200 Valley West Drive
Suite 309-4
West Des Moines, IA  50266
877-376-6158
curtiscom@hrcare.com





POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 06 10 | Policy Jacket |
| MIL 1214 09 17 | Trade Or Economic Sanctions |
| MPIL 1005-CA 01 17 | California Surplus Lines Notice (D-2) |
| MPIL 1007 03 14 | Privacy Notice |
| MPIL 1083 04 15 | US Treasury Dept's Office Of Foreign Assets Control ("OFAC") Policyholder Notice |
| MPML 1003 01 15 | Confirmation Of Certified Acts Of Terrorism |
| MDML 1000 01 16 | For Profit Management Liability Policy Declaration |
| MDIL 1001 08 10 | Forms Schedule |
| MML 1000 01 16 | General Terms and Conditions |
| MML 1001 01 16 | Directors and Officers and Company Liability Coverage Part |
| MML 1002 01 16 | Employment Practices & Third Party Discrimination Liability Coverage Part |
| MEML 5201-CA 01 11 | Service of Suit - California |
| MML 1213 05 10 | Healthcare Endorsement |
| MML 1216 05 10 | IRCA Sublimit Endorsement |
| MML 1223 01 15 | Certified Acts of Terrorism Coverage |
| MML 1226 01 16 | Severability Changes |
| MML 1228 01 16 | Defense and Settlement Changes |
| MML 1238 01 16 | Regulatory Endorsement |
| MML 1264 06 12 | Amend Other Insurance |
| MML 1265 06 12 | Amend Notice of Claims |
| MML 1267 01 16 | Databreach Coverage Parts Endorsement |
| MML 1268 01 16 | Additional Entities Insured Including Subsidiaries |
| MML 1312 01 16 | Prior Acts Exclusion |
| MML 1322 06 12 | Exclusion - Major Shareholder |
| MML 1335 06 12 | Exclusion - Absolute Bodily Injury/Property Damage |
| MML 1340 08 15 | Exclusion - Broad Professional Liability |
| MML 1347 01 16 | Specific Matter Exclusion |
| MML 1353 01 16 | Amend Severability - Exclusions |
| MML 1365 01 16 | Consumer Protection Exclusion |
| MML MANUSCRIPT-1 | Sexual Misconduct Exclusion (Third Party) |



**EVANSTON INSURANCE COMPANY**

# GENERAL TERMS AND CONDITIONS

**TABLE OF CONTENTS**

SECTION I – TERMS AND CONDITIONS ................................................................................................. 2

SECTION II – DEFINITIONS .................................................................................................................... 2

SECTION III – LIMITS OF LIABILITY, RETENTION, COINSURANCE AND SINGLE CLAIMS ................... 6

SECTION IV – DEFENSE, SETTLEMENT AND COOPERATION ............................................................. 8

SECTION V – REPORTING AND NOTICE ............................................................................................... 9

SECTION VI – COVERAGE EXTENSIONS ............................................................................................ 10

SECTION VII – ALLOCATION ............................................................................................................... 12

SECTION VIII – CHANGES IN EXPOSURE .......................................................................................... 13

SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES .......... 13

SECTION X – CANCELLATION AND NONRENEWAL ........................................................................... 14

SECTION XI – OTHER INSURANCE ..................................................................................................... 14

SECTION XII – SUBROGATION ............................................................................................................ 14

SECTION XIII – ALTERATION, ASSIGNMENT AND HEADINGS ........................................................... 15

SECTION XIV – PAYMENT PRIORITY ................................................................................................... 15

SECTION XV – TERRITORY AND VALUATION ..................................................................................... 15

SECTION XVI – AUTHORIZATION CLAUSE ......................................................................................... 15

SECTION XVII – BANKRUPTCY ........................................................................................................... 15

SECTION XVIII – EXCLUSIONS ............................................................................................................ 16



**MANAGEMENT LIABILITY**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL TERMS AND CONDITIONS

In consideration of the premium paid and in reliance upon the statements made and information furnished to the Insurer in the **Application**, which is made a part hereof, and subject to the terms, conditions and limitations of this policy, the Insurer and the **Insureds** agree as follows:

## SECTION I – TERMS AND CONDITIONS

This policy is comprised of these GENERAL TERMS AND CONDITIONS, the Declarations, various Coverage Parts and endorsements, if applicable, and the **Application**. Although various Coverage Parts may be referenced in this policy, a Coverage Part is included within this policy only if that Coverage Part is stated as being purchased in the Coverage Schedule in Item 5. of the Declarations. Further a Coverage Extension shall be available only if a Limit amount is stated in the Declarations for each such extension.

Except for these GENERAL TERMS AND CONDITIONS or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the GENERAL TERMS AND CONDITIONS but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the GENERAL TERMS AND CONDITIONS is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

Throughout this policy, the term Insurer refers to the insurance company named in the Declarations providing this insurance.

## SECTION II – DEFINITIONS

When used in this policy, the following terms are defined as follows and appear in bold throughout this policy:

A. **Application** means all materials and information, including all signed applications and any materials attached thereto or incorporated therein, submitted by or on behalf of the **Insureds** to the Insurer in connection with the underwriting of this policy or any policy issued by the Insurer of which this policy is a direct or indirect renewal or replacement.

The **Application** is deemed attached to and incorporated into this policy.

B. **Claim** means, with respect to each purchased Coverage Part, those matters defined as a **Claim** in each such Coverage Part. For the purpose of the Employment Practices and Third Party Discrimination Liability Coverage Part, if purchased, **Claim** includes any **Employment Practices Claim** and **Third Party Discrimination Claim** and **Wage and Hour Claim**.

C. **Claim Expenses** means reasonable and necessary fees, costs and expenses incurred by:

1. The Insurer, if duty to defend coverage has been purchased for the applicable Coverage Part;

2. The **Insureds**, if duty to defend coverage has not been purchased for the applicable Coverage Part;

In the defense or appeal of that portion of any **Claim** for which coverage is afforded under this policy, including without limitation court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Insurer to apply for or furnish any such bonds; provided, however, that **Claim Expenses** shall not include salary, wages, overhead, benefit expenses or charges of any kind associated with **Insured Persons** or the Insurer.

**D.**     **Company** means, collectively, the **Parent Company** and its **Subsidiaries**, including any such organization as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

**E.**     **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

**F.**     **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing system, network or related electronic equipment for the storage of such communications; and any computer.

**G.**     **Employee** means the following:

   **1.**     Any natural person in the regular service of the **Company** in the ordinary course of the **Company's** business and whom the **Company** compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, including any such natural person who is a leased, temporary, part-time or seasonal employee or intern of the **Company**;

   **2.**     Any natural person independent contractor who is treated under applicable law as an employee of the **Company**;

   **3.**     Any **Volunteer** of the **Company**; and

   **4.**     Solely with respect to the coverage afforded under the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART, provided such Coverage Part is purchased and attached to this policy, any applicant for employment with the **Company**.

**H.**     **Employment Practices Claim** means a **Claim**, as defined in the applicable Coverage Part, brought by or on behalf of any past, present, future or prospective **Employee** of the **Company** against any **Insured** for a **Wrongful Employment Practice** or a **Wrongful Internet Activity**.

**I.**     **Executive Officer** means, with respect to any **Company,** any natural person who was, now is or shall during the **Policy Period** become such **Company's** president, chief executive officer, chief operating officer, chief financial officer or in-house general counsel or the functional equivalent of any of the foregoing positions.

**J.**     **Extended Reporting Period** means the period described in Item 3.B. of the Declarations, if purchased, pursuant to SECTION VI C. of these GENERAL TERMS AND CONDITIONS, or if such option is not purchased pursuant to SECTION VI C., **Extended Reporting Period** refers to any **Retired Director or Officer Extended Reporting Period**, if purchased, pursuant to SECTION VI D. or any **Former Subsidiary Extended Reporting Period**, if purchased, pursuant to SECTION VI E. of these GENERAL TERMS AND CONDITIONS.

**K.**     **Extradition** means any formal process by which any **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

**L.**     **Financial Impairment** means the status of the **Company** resulting from:

   **1.**     The appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**, or

   **2.**     The **Company** becoming a debtor in possession.

**M.**     **Former Subsidiary Extended Reporting Period** means the period, if purchased, pursuant to SECTION VI E., FORMER SUBSIDIARY EXTENDED REPORTING PERIOD, of these GENERAL TERMS AND CONDITIONS.

**N.**     **Insured** means, with respect to each purchased Coverage Part, the entities, **Plans** and natural persons defined as an **Insured** in each such Coverage Part.

**O.**     **Insured Person** means, with respect to each purchased Coverage Part, any natural person defined as an **Insured Person** in each such Coverage Part.

**P.**     **Interrelated Wrongful Acts** means all **Wrongful Acts**, including all **Wrongful Employment Practices**, that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

**Q.**     **Loss** means, with respect to each purchased Coverage Part, the amounts defined as **Loss** in each such Coverage Part.

**R.**     **Manager** means, with respect to any **Company** that is a limited liability company, any natural person who was, now is or shall during the **Policy Period** become such **Company's** manager, managing member, member of the board of managers or equivalent executive.

**S.**    **Non-Indemnifiable Loss** means **Loss** incurred by an **Insured Person** for which the **Company** is not permitted by common or statutory law to indemnify or is not financially able to indemnify by reason of **Financial Impairment**.

**T.**    **Parent Company** means the organization stated in Item 1. of the Declarations.

**U.**    **Plans** means the plans and programs defined as **Plans** in the FIDUCIARY LIABILITY COVERAGE PART, if purchased.

**V.**    **Policy Period** means the period stated in Item 2. of the Declarations, subject to prior cancellation or termination.

**W.**    **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. **Pollutants** also means any other air emission, odor, waste water, oil or old products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

**X.**    **Potential Unauthorized Access** means the threat or potential threat of an **Unauthorized Access** arising from a theft or loss of any component of the **Company's Electronic Communications System**.

**Y.**    **Private Data** means data containing an individual's:

**1.**    Driver's license or other state-issued identification number; social security number; unpublished telephone number; savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number;

**2.**    "Nonpublic personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant thereto;

**3.**    "Protected healthcare information" as defined in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and regulations issued pursuant thereto, and medical and healthcare information;

**4.**    Private personal information as defined under a **Security Breach Notice Law**; and

**5.**    Private personal information as defined under the law of a country other than the United States, which law is intended to provide for the protection of such private personal information;

Not including any lawfully available data accessible by the general public.

**Z.**    **Retired Director or Officer** means any **Insured Person** who, during the **Policy Period**, retired from: **(i)** serving and no longer serves as a duly elected or appointed director, trustee, governor, **Manager,** officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent; and **(ii)** serving and no longer serves any **Company**, **Outside Entity**, or **Plan** as an **Insured Person** in any capacity under this policy.

**AA.**    **Retired Director or Officer Extended Reporting Period** means the period, if purchased, pursuant to SECTION VI D., RETIRED DIRECTOR OR OFFICER EXTENDED REPORTING PERIOD, of these GENERAL TERMS AND CONDITIONS.

**BB.**    **Security Breach Notice Law** means any law, statute or regulation within the United States of America, its territories or possessions, Puerto Rico or Canada requiring the **Company** to notify individuals of the compromise or possible compromise of the security of their confidential information in the **Company's** care, custody or control and the European Union (EU) Data Protection Act of 1995.

**CC.**    **Subsidiary** means:

**1.**    Any organization in which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position is owned, in any combination, by one or more other **Company(ies)**;

**2.**    Any organization in which one or more other **Company(ies)**, in any combination, have the right, pursuant to a written contract with or the by-laws, charter, operating agreement or similar document of such organization, to elect or appoint a majority of the directors or equivalent position of such organization;

3. Any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more other **Company(ies)**; and

4. Any organization operated as a joint venture in which, on or prior to the inception date stated in Item 2. of the Declarations, the **Parent Company** owns, directly or through one or more **Subsidiaries**, exactly fifty percent (50%) of the organization's outstanding securities with voting rights and, under a written agreement with the organization's remaining owners, has sole control of the organization's management and operations.

DD. **Third Party Discrimination Claim** means a **Claim**, as defined in the applicable Coverage Part, other than an **Employment Practices Claim**, which is brought by or on behalf of any natural person who is a customer or client of the **Company** and who is not an **Insured Person** or an applicant for employment with the **Company**, for a **Wrongful Act** or a **Wrongful Internet Activity** either of which constitutes an actual or alleged violation of any law or public policy concerning discrimination or sexual harassment. Provided, however, there shall be no coverage for **Third Party Discrimination Claims** if the Third Party Discrimination Liability limits stated in Item 5.B. of the Declarations are shown to be $0 or Not Purchased.

EE. **Unauthorized Access** means a breach of the **Company's** security measures, systems, procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the **Company's Electronic Communications System**, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the **Insured**. **Unauthorized Access** also includes:

1. Access to the **Company's Electronic Communications System** that is with the **Insured's** permission where such permission is the result of fraud or deception;

2. Use of the **Company's Electronic Communications System** by a party authorized by the **Insured** to use such system, who does so for an unauthorized purpose;

3. The introduction of programs into the **Company's Electronic Communications System** which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party;

4. A credible threat or an extortion demand received by the **Company** threatening or portending loss, injury or damage to:

   a. The **Company's Electronic Communications System**, including programs, electronic data and media which form a part of the **Company's Electronic Communications System**; or

   b. Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the **Company's Electronic Communications System**;

   For the purpose of extorting money or other valuable consideration from the **Company**;

5. Failure to prevent a denial of service attack on the **Company's Electronic Communications System** or to prevent the use of the **Company's Electronic Communications System** by an unauthorized user or code to launch a denial of service attack on a third party;

6. The theft or loss of any paper records; and

7. The failure of any third party to prevent the unauthorized viewing, copying or distribution of **Private Data** which the **Company** has entrusted to such party under a written contract or agreement that specifically requires such party to protect the confidentiality of the **Private Data** so entrusted.

FF. **Unintentional Data Compromise** means any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the **Company's** customer's(s') and/or **Employee's(s')** **Private Data**.

GG. **Volunteer** means any natural person who is not an **Employee** and who donates his or her services and acts at the direction of and within the scope of duties determined by the **Company** and who is not paid a fee, salary or other compensation by the **Company** or by any other party for the services performed for the **Company**.

HH. **Wrongful Act** means, with respect to each purchased Coverage Part, any act, error, omission and other matter defined as a **Wrongful Act** in each such Coverage Part. For purposes of SECTION I - INSURING AGREEMENTS A. in the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART if purchased, **Wrongful Act** means a **Wrongful Employment Practice**. For purposes of SECTION II - EXTENSIONS A. in the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART if purchased, **Wrongful Act** means a **Wage and Hour Wrongful Act**.

**II.**   **Wrongful Employment Practice** means any of the following actual or alleged acts, errors or omissions by the **Insured Persons** in their capacity as such or by the **Company**:

    **1.**   Wrongful termination (including constructive discharge) of an **Employee**;

    **2.**   Violation of any law or public policy concerning discrimination in employment whether based upon age, race, national origin, religion, sex, sexual preference, marital status, disability, medical leave or genetic predisposition;

    **3.**   Employment-related torts including without limitation wrongful termination, failure or refusal to hire or promote; wrongful discipline; wrongful reference, deprivation of a career opportunity, demotion or adverse change in terms, conditions or status of employment; wrongful failure to grant tenure; humiliation; retaliation for asserting a legal right; workplace harassment or bullying including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications; negligent hiring, retention, supervision, training or performance evaluation; and employment-related misrepresentation, defamation, invasion of privacy or infliction of emotional distress; or

    **4.**   Violation of any other employment-related law, rule or regulation, including without limitation any civil rights or fair employment practices law;

    **Wrongful Employment Practice** does not include a **Wage and Hour Wrongful Act**.

**JJ.**   **Wrongful Internet Activity**:

    **1.**   For purposes of SECTION I - INSURING AGREEMENTS A. in the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART if purchased, means actual or alleged acts, errors or omissions as described in the definition of **Wrongful Employment Practice**:

        **a.**   Which are carried out by an **Employee**; and

        **b.**   Which acts, errors or omissions are carried out by means of the Internet, including but not limited to social networking activities regardless of whether such Internet activity is during or outside of work hours or on or off work premises.

    **2.**   For purposes of SECTION I - INSURING AGREEMENTS B. in the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART if purchased, means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty:

        **a.**   Which are carried out by an **Employee**; and

        **b.**   Which error, misstatement, misleading statement, act, omission, neglect, or breach of duty is carried out by means of the Internet, including but not limited to social networking activities regardless of whether such Internet activity is during or outside of work hours or on or off work premises.

## SECTION III – LIMITS OF LIABILITY, RETENTION, COINSURANCE AND SINGLE CLAIMS

**A.**   **LIMITS OF LIABILITY**

    **1.**   Combined Aggregate Limit of Liability

    The amount stated in Item 7. of the Declarations shall be the Insurer's maximum aggregate liability for all **Loss** covered under all Coverage Parts, combined, for all **Claims** first made during the **Policy Period** and the **Extended Reporting Period**, if exercised.

    **2.**   Coverage Part Limits of Liability

        **a.**   Directors and Officers and Company Liability Coverage Part Each Claim Limit:  The Limit of Liability for each **Claim** under each Insuring Agreement in the DIRECTORS AND OFFICERS LIABILITY COVERAGE PART, SECTION I – INSURING AGREEMENTS A., B. and C., if purchased, for all **Loss** on account of each **Claim** first made during the **Policy Period** and the **Extended Reporting Period**, if exercised, shall be as stated in Item 5. of the Declarations.

        **b.**   Employment Practices and Third Party Discrimination Liability Coverage Part Each Claim Limits:

            **(1)**   The Limit of Liability for each **Claim** under EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART SECTION I – INSURING AGREEMENTS A., Employment Practices Liability Coverage, if purchased, for all **Loss** on account of each **Claim**

first made during the **Policy Period** and the **Extended Reporting Period**, if exercised, shall be as stated in Item 5. of the Declarations.

**(2)** The Limit of Liability for each **Claim** under the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART SECTION I – INSURING AGREEMENTS B., Third Party Discrimination Liability Coverage, if purchased, for all **Loss** on account of each **Claim** first made during the **Policy Period** and the **Extended Reporting Period**, if exercised, shall be as stated in Item 5. of the Declarations.

**c.** Fiduciary Liability Coverage Part Each Claim Limit: The Limit of Liability for each **Claim** under each Insuring Agreement in the FIDUCIARY LIABILITY COVERAGE PART, SECTION I – INSURING AGREEMENTS A. and B., if purchased, for all **Loss** on account of each **Claim** first made during the **Policy Period** and the **Extended Reporting Period**, if exercised, shall be as stated in Item 5. of the Declarations.

**d.** Coverage Part Aggregate Limit of Liability: The respective Limit of Liability for each Coverage Part, as stated in the Coverage Schedule in Item 5. of the Declarations, shall be the Insurer's maximum aggregate liability under each such Coverage Part for all **Loss** on account of all **Claims** first made during the **Policy Period** and the **Extended Reporting Period**, if exercised. The Limit of Liability for each Coverage Part shall be part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7. of the Declarations.

**3.** Coverage Parts Which Share a Limit of Liability

Notwithstanding SECTION III A.2., the Insurer's maximum aggregate liability for all **Loss** covered under all Coverage Parts which share a Limit of Liability, as stated in Item 6. of the Declarations, shall be the larger(est) of the amounts stated in Item 5. of the Declarations as the Aggregate Limit of Liability for each Coverage Part which shares a Limit of Liability. Such shared Limit of Liability shall be part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7. of the Declarations. This paragraph further limits the Insurer's maximum liability under each such Coverage Part and does not increase the respective separate Limit of Liability for each Coverage Part.

**4.** Claim Expenses Within Limit of Liability

**Claim Expenses** are part of and not in addition to the applicable Limit of Liability, and the payment by the Insurer of **Claim Expenses** reduces such Limit of Liability. If the applicable Limit of Liability is exhausted by payment of **Loss**, the Insurer's obligations, including without limitation any duty to defend, shall be completely fulfilled and extinguished.

**B.    RETENTION**

**1.** Each Claim Retention

The Insurer's liability with respect to **Loss** for each specific type of **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention stated in the Coverage Schedule in Item 5. of the Declarations, and such Retention shall be borne by the **Insured** uninsured and at the **Insured's** own risk. No Retention shall apply to **Non-Indemnifiable Loss** incurred by an **Insured Person**, except as required by state law.

**2.** Retention Credit for Early Settlements

Notwithstanding the foregoing, the Retention applicable to a **Claim** against an **Insured** will be reduced by the lesser of twenty-five percent (25%) or ten thousand dollars ($10,000), provided all of the following conditions are met:

**a.** The **Insured** provides the Insurer written notice of such **Claim** within thirty (30) days after it is first made and such notice is otherwise consistent with the policy's terms and conditions;

**b.** The Insurer recommends to the **Insured** a settlement of the **Claim** within the applicable Limit of Liability;

**c.** The **Insured** consents to such settlement within ninety (90) days of the date it provided the Insurer notice of such **Claim**; and

**d.** The **Claim** settles under the terms recommended by the Insurer and consented to by the **Insured**.

**C.    COINSURANCE**

Solely with respect to **Loss** (other than **Non-Indemnifiable Loss**) in excess of the applicable Retention for any **Claim**, the **Company** shall bear uninsured at its own risk, the applicable percentage of each **Loss** stated in the Coverage Schedule in Item 5. of the Declarations as the Coinsurance Percentage and the Insurer's liability for **Loss** shall apply only to the remaining percentage of such **Loss**.

**D.    SINGLE CLAIM**

All **Claims** which arise out of the same **Wrongful Act** or **Interrelated Wrongful Acts** of the **Insured** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy Period** or any **Extended Reporting Period**.

**E.    SINGLE CLAIM COVERED BY MULTIPLE COVERAGE PARTS**

If a single **Claim** as described in SECTION III D. is covered in whole or in part under more than one Coverage Part of this policy:

**1.**    The applicable Retention under each such Coverage Part shall be applied with respect to **Loss** incurred under such Coverage Part, provided the sum of all applicable Retentions under all such Coverage Parts shall not exceed the larger(est) of such applicable Retentions; and

**2.**    The remaining applicable Limits of Liability under each such Coverage Part shall apply with respect to **Loss** incurred under such Coverage Part, provided the Insurer's maximum aggregate liability for all **Loss** covered under all such Coverage Parts, combined, on account of such **Claim** shall not exceed the larger(est) of such remaining applicable Limits of Liability. This SECTION III E.2. does not increase the Insurer's maximum liability with respect to such **Claim**, which is also subject to the Combined Aggregate Limit of Liability as stated in Item 7. of the Declarations and any shared Limit of Liability described in SECTION III A.3.

**SECTION IV – DEFENSE, SETTLEMENT AND COOPERATION**

**A.    DEFENSE AND SETTLEMENT**

**1.**    If duty to defend coverage is purchased with respect to any Coverage Part as stated in the Coverage Schedule in Item 5. of the Declarations:

    **a.**    The Insurer shall have the right and duty to defend any **Claim** covered under such Coverage Part, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend any **Claim** shall cease upon exhaustion of the Limit of Liability applicable to such **Claim**.

    **b.**    If the law of the state of the **Parent Company's** domicile allows the **Insureds** to control the selection of defense counsel where a conflict of interest has arisen between the **Insureds** and the Insurer, the Insurer will provide to the **Insureds** a list of attorneys or law firms from which the **Insureds** may designate defense counsel who shall act solely in the interest of the **Insureds**, and the **Insureds** shall direct such defense counsel to cooperate with the Insurer. Such cooperation shall include:

        **(1)**    Providing to the Insurer on a regular basis, but not less frequently than every three (3) months, written reports on claimed damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the **Claim**;

        **(2)**    Providing to the Insurer any other reasonable information requested by the Insurer;

        **(3)**    Providing to the Insurer fully itemized **Claim Expenses** billings on a periodic basis; and

        **(4)**    Good faith efforts to resolve any **Claim Expenses** disputes with the Insurer and the **Insureds**.

    Fees and costs incurred by such defense counsel at the Insurer's request or to cooperate with the Insurer, as set forth above, shall be included in **Claim Expenses**.

**2.**    If duty to defend coverage is not purchased with respect to any Coverage Part as stated in the Coverage Schedule in Item 5. of the Declarations, it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim** covered under such Coverage Part. Solely with respect to such Coverage Part, the Insurer shall advance covered **Claim Expenses** on a current basis. Any advancement of covered **Claim Expenses** shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the

extent it is later determined the **Insureds** shall not be entitled under the terms and conditions of this policy to coverage for such **Claim Expenses**.

3.  With respect to any Coverage Part:

    **a.**  The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Claim Expenses** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with respect to any **Claim**, without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for or as a result of any offer to settle, settlement, **Claim Expenses**, assumed obligation, admission or stipulated judgment to which it has not given its prior written consent.

    **b.**  The Insurer shall have the right and shall be given the opportunity to make any investigation it deems necessary and to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that is or reasonably could be covered in whole or in part by the Coverage Part.

4.  The Insurer may, with the consent of an **Insured** against whom a **Claim** is made, make any settlement of such **Claim** against such **Insured** if such **Claim** is covered under a Coverage Part. If the **Insured** withholds consent to any such settlement acceptable to the claimant, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed the sum of:

    **a.**  The amount for which the Insurer could have settled such **Claim**;

    **b.**  **Claim Expenses** accrued as of the date such settlement was proposed in writing by the Insurer to the **Insured**; and

    **c.**  Eighty percent (80%) of all covered **Loss** incurred thereafter on account of such **Claim**.

## B.  COOPERATION

With respect to all purchased Coverage Parts, the **Insureds** agree to provide the Insurer with all information, assistance, and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery. Without limiting the foregoing and upon the Insurer's request, the **Insureds** shall: **(1)** submit to examination and interview by a representative of the Insurer and while not in the presence of any other **Insured**, under oath if required; **(2)** attend hearings, depositions, arbitrations, mediations and trials; and **(3)** assist in effecting settlement, and securing and giving evidence; all without cost to the Insurer, other than expenses and loss of earnings if provided pursuant to the following paragraph.

If an **Insured Person** attends any hearing, deposition, arbitration, mediation or trial at the Insurer's written request, and upon receipt by the Insurer of satisfactory written proof of loss, the Insurer shall reimburse the **Insured Person** the following amounts:

1.  All reasonable and necessary out-of-pocket expenses, other than **Claim Expenses**, incurred by the **Insured Person** for such attendance; and

2.  Up to five hundred dollars ($500) per day for loss of earnings attributable to such attendance.

The Insurer's maximum liability for all such expenses and loss of earnings attributable to all **Claims** covered under this policy shall be fifteen thousand dollars ($15,000), which is in addition to and not part of the Limits of Liability stated in Items 5. and 7. of the Declarations.

## SECTION V – REPORTING AND NOTICE

## A.  NOTICE OF CLAIMS

With respect to any purchased Coverage Part:

1.  As a condition precedent to their rights under such Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after an **Executive Officer** or an employee of the **Company's** office of general counsel, risk management or functionally equivalent departments, if any, first learns of such **Claim**, but in no event later than: **(i)** ninety (90) days after expiration of the **Policy Period**; or **(ii)** the expiration of the **Extended Reporting Period**, if exercised.

**2.** The **Insureds** shall include within any notice of **Claim** a description of the **Claim**, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the claimants, and the date and manner in which the **Insureds** first became aware of the **Claim**.

## B. DISCOVERY OF POTENTIAL CLAIMS

With respect to any purchased Coverage Part, if during the **Policy Period** or the **Extended Reporting Period**, if exercised, the **Insured** becomes aware of any circumstance that could give rise to a **Claim** against the **Insured** and gives written notice of such circumstance containing the information listed below to the Insurer during the **Policy Period** or the **Extended Reporting Period**, if exercised, then any **Claim** subsequently arising therefrom shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Insurer.

It is a condition precedent to the coverage afforded by this SECTION V B. that such written notice to the Insurer contain the following information:

**1.** A description and date of the **Wrongful Act** which could be alleged in the potential **Claim**;

**2.** The injury or damage which has or may result from such **Wrongful Act**;

**3.** The identity of the **Insureds** who may be the subject of the potential **Claim**;

**4.** The identity of potential claimants; and

**5.** The manner and time in which the **Insureds** first became aware of such circumstance or **Wrongful Act**.

The Insurer, at its sole option, may investigate such circumstance or **Wrongful Act**.

## C. NOTICE

Any notice to the Insurer pursuant to this SECTION V shall designate under which Coverage Part(s) the notice is given, and such notice shall not be deemed to be an effective notice under any other Coverage Part(s).

Except as otherwise provided in this policy, all notices to the Insurer shall be in writing and given to the Insurer at the applicable address stated in Item 10. of the Declarations. All notices to the **Insureds** may be given to the **Parent Company** at the address stated in Item 1. of the Declarations.

## SECTION VI – COVERAGE EXTENSIONS

## A. ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Persons** shall be considered an **Insured Person** but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All provisions in these GENERAL TERMS AND CONDITIONS and the respective Coverage Part applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

## B. ADDITIONAL CLAIM EXPENSES POLICY AGGREGATE LIMIT OF LIABILITY

The Additional **Claim Expenses** Policy Aggregate Limit of Liability stated in Item 8.A. of the Declarations shall apply to any covered **Claim Expenses** which would be paid except for the exhaustion of the Combined Aggregate Limit of Liability stated in Item 7. of the Declarations, including any applicable Sublimits, under all purchased Coverage Parts of this insurance. This Additional **Claim Expenses** Policy Aggregate Limit of Liability is the most the Insurer will pay in any one **Policy Period** regardless of the number of **Claims** made or Coverage Parts affected. In no event will this additional Limit apply until the entire policy's Combined Aggregate Limit of Liability is exhausted. Provided, however, there shall be no Additional **Claim Expenses** Policy Aggregate Limit of Liability if such Limit amount is stated in Item 8.A. of the Declarations to be $0 or Not Purchased.

## C. EXTENDED REPORTING PERIOD

If the Insurer or the **Parent Company** cancels or nonrenews this policy other than for nonpayment of premium, the **Insureds** shall have the right, upon payment of the applicable additional premium stated in Item 3.A of the Declarations, to an extension of the coverage granted by this policy for the respective period stated in Item 3.B of

the Declarations immediately following the effective date of such cancellation or nonrenewal, but such extension of coverage shall only apply to **Claims** first made against the **Insureds** during such period for any **Wrongful Act** which happened prior to the effective date of such cancellation or nonrenewal.

This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Insureds** to the Insurer within thirty (30) days following the effective date of cancellation or nonrenewal. If such written request and payment of additional premium are not received by the Insurer within such thirty (30) days, there shall be no right to purchase the **Extended Reporting Period** at a later date.

The quotation of a different premium, Retention, Coinsurance, Limit of Liability or other coverage terms at renewal does not constitute a cancellation or nonrenewal for the purpose of this SECTION VI C. The entire additional premium for the **Extended Reporting Period** shall be deemed fully earned at the inception of the **Extended Reporting Period**.

The **Insureds** shall be entitled to elect only one **Extended Reporting** Period under this policy. The **Extended Reporting Period** shall not in any way increase the Limits of Liability stated in Items 5. and 7. of the Declarations.

**D.    RETIRED DIRECTOR OR OFFICER EXTENDED REPORTING PERIOD**

If the Insurer or the **Parent Company** cancels or nonrenews this policy other than for nonpayment of premium and the right to elect an **Extended Reporting Period** under SECTION VI C. of these GENERAL TERMS AND CONDITIONS expires with no election of any **Extended Reporting Period**, any **Retired Director or Officer** alone or if more than one **Retired Director or Officer** so elects, in concert with all other electing **Retired Director(s) or Officer(s)**, may purchase a **Retired Director or Officer Extended Reporting Period** by providing the Insurer written notice of his, her or their election within thirty (30) days of when the right under SECTION VI C. of these GENERAL TERMS AND CONDITIONS expires.

Coverage under such **Retired Director or Officer Extended Reporting Period** will apply: **(1)** only to a **Claim** first made against an electing **Retired Director or Officer** during such period for any **Wrongful Act** which happened prior to the date on which such electing **Retired Director or Officer** became qualified as such; and **(2)** only to **Non-Indemnifiable Loss** incurred by the electing **Retired Director(s) or Officer(s)**; and **(3)** otherwise subject to the terms and conditions of this policy.

Promptly after receiving written notice of an election, the Insurer shall notify the electing **Retired Director(s) or Officer(s)** of the additional premium due for his, her or their **Retired Director or Officer Extended Reporting Period**. Coverage is conditioned upon the Insurer's receipt of payment in full of such additional premium within fifteen (15) days of the Insurer's notice of the amount due.

Such coverage also will apply only in excess of the amount of any deductibles, retentions, co-insurance and limits of liability under any other valid and collectible policy that insures **Loss** resulting from such a **Claim**, whether such other policy is stated to be primary, contributory, excess, contingent, or otherwise, and even if such other policy is written specifically excess of this policy by reference to this policy's policy number or otherwise. For example, if such other policy has a **Policy Period** that overlaps with a purchased **Retired Director or Officer Extended Reporting Period**, any coverage under this **Retired Director or Officer Extended Reporting Period** would be excess of the amount of any deductible, retention, co-insurance and limits of liability under such other policy, regardless of what the other policy says about how it applies when there is other insurance. The wording of this paragraph will control over SECTION XI of these GENERAL TERMS AND CONDITIONS, OTHER INSURANCE.

The purchase by any **Retired Director or Officer** alone or if more than one **Retired Director or Officer** so elects, in concert with all other electing **Retired Director(s) or Officer(s)**, of a **Retired Director or Officer Extended Reporting Period** under this policy will not mean that each **Retired Director or Officer** will have a personal Limit of Liability for himself or herself or that the **Retired Directors or Officers** will have any additional or increased Limit of Liability that applies to them collectively as a group. The purchase of a **Retired Director or Officer Extended Reporting Period** under this policy is not a purchase of an additional or increased Limit of Liability. The Limits of Liability stated in Items 5., 6. and 7. of the Declarations and remaining available will apply to such **Claims**, subject to the policy's GENERAL TERMS AND CONDITIONS including, without limitation, SECTION III LIMITS OF LIABILITY, RETENTION, COINSURANCE AND SINGLE CLAIMS.

Coverage under this **Retired Director or Officer Extended Reporting Period** otherwise is subject to all other terms and conditions of the policy.

**E.    FORMER SUBSIDIARY EXTENDED REPORTING PERIOD**

If the Insurer or the **Parent Company** cancels or nonrenews this policy other than for nonpayment of premium and the right to elect an **Extended Reporting Period** under SECTION VI C. of these GENERAL TERMS AND CONDITIONS expires with no election of any **Extended Reporting Period**, and the right to elect a **Retired Director or Officer Extended Reporting Period** under SECTION VI D. of these GENERAL TERMS AND CONDITIONS expires with no election of any **Retired Director or Officer Extended Reporting Period**, any entity which during the **Policy Period** ceased to be a **Subsidiary** alone, or if more than one entity which during the **Policy Period** ceased to be **Subsidiaries** so elect, in concert with all other electing former **Subsidiary(ies)**, may purchase a **Former Subsidiary Extended Reporting Period** by providing the Insurer written notice of such former **Subsidiary's(ies')** election within thirty (30) days of when the right under SECTION VI D. of these GENERAL TERMS AND CONDITIONS expires.

Coverage under such **Former Subsidiary Extended Reporting Period** will apply: **(1)** only to a **Claim** first made against such electing, former **Subsidiary(ies)** during such period for any **Wrongful Act** which happened prior to such former **Subsidiary's(ies')** last day as a **Subsidiary**; and **(2)** otherwise subject to the terms and conditions of this policy.

Promptly after receiving written notice of an election, the Insurer shall notify the electing former **Subsidiary(ies)** of the additional premium due for its or their **Former Subsidiary Extended Reporting Period**. Coverage is conditioned upon the Insurer's receipt of payment in full of such additional premium within fifteen (15) days of the Insurer's notice of the amount due.

Such coverage also will apply only in excess of the amount of any deductibles, retentions, co-insurance and limits of liability under any other valid and collectible policy that insures **Loss** resulting from such a **Claim**, whether such other policy is stated to be primary, contributory, excess, contingent, or otherwise, and even if such other policy is written specifically excess of this policy by reference to this policy's policy number or otherwise. For example, if such other policy has a **Policy Period** that overlaps with a purchased **Former Subsidiary Extended Reporting Period**, any coverage under this **Former Subsidiary Extended Reporting Period** would be excess of the amount of any deductible, retention, co-insurance and limits of liability under such other policy, regardless of what the other policy says about how it applies when there is other insurance. For purposes of this policy, the wording of this paragraph will control over SECTION XI of these GENERAL TERMS AND CONDITIONS, OTHER INSURANCE.

The purchase by any former **Subsidiary** alone or if more than one former **Subsidiary** so elects, in concert with all other electing former **Subsidiary(ies)**, of a **Former Subsidiary Extended Reporting Period** under this policy will not mean that each former **Subsidiary** will have a personal Limit of Liability for itself or that the former **Subsidiary(ies)** will have any additional or increased Limit of Liability that applies to them collectively as a group. The purchase of a **Former Subsidiary Extended Reporting Period** under this policy is not a purchase of an additional or increased Limit of Liability. The Limits of Liability stated in Items 5., 6. and 7. of the Declarations and remaining available will apply to such **Claims**, subject to the policy's GENERAL TERMS AND CONDITIONS including, without limitation, SECTION III LIMITS OF LIABILITY, RETENTION, COINSURANCE AND SINGLE CLAIMS.

Coverage under this **Former Subsidiary Extended Reporting Period** otherwise is subject to all other terms and conditions of the policy.

**SECTION VII – ALLOCATION**

With respect to all purchased Coverage Parts, if in any **Claim** the **Insureds** incur both **Loss** covered by this policy and loss not covered by this policy because such **Claim** includes both covered and uncovered matters, the **Insureds** and the Insurer shall allocate such amount as follows:

**1.**    If the Insurer has the duty to defend such **Claim** pursuant to Item 5. of the Declarations, one hundred percent (100%) of the **Insureds**' **Claim Expenses** shall be allocated to covered **Loss**; and

**2.**    All other loss described above shall be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters.

Notwithstanding the foregoing, if a **Claim** is made against both **Insureds** who are afforded coverage for such **Claim** and any other party(ies)  who  is(are) not afforded coverage for such  **Claim**, the Insurer shall have no obligation with regard to legal fees and expenses, settlements, or judgments incurred by any such other  party(ies) who is(are)  not afforded

coverage for such **Claim**. Any legal fees, settlements or judgments resulting from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties.

In any arbitration, suit or other proceeding among the Insurer and the **Insureds** or the **Company**, no presumption shall exist concerning what is a fair and proper allocation between covered **Loss** and uncovered loss.

## SECTION VIII – CHANGES IN EXPOSURE

### A.    NEW ORGANIZATIONS

**1.**    If before or during the **Policy Period** the **Company** acquires or creates a new **Subsidiary** or acquires an entity by merger or consolidation, coverage under this policy automatically shall apply to the new organization and its **Insureds**, provided such coverage shall apply only with respect to any **Claim** for a **Wrongful Act** taking place after such acquisition or creation, and shall be subject to paragraphs 2. and 3. below.

**2.**    If:

    **a.**    Such newly acquired organization has issued any publicly-owned debt or equity securities;

    **b.**    The total assets of such newly acquired organization exceeds twenty-five percent (25%) of the total assets of the **Parent Company** as reflected in their respective most recent audited consolidated financial statements;

    **c.**    Solely with respect to the Employment Practices and Third Party Discrimination Liability Coverage Part, if purchased, the total number of **Employees** of all **Companies** increases by more than twenty-five percent (25%) as an immediate result of such acquisition, merger or consolidation; or

    **d.**    Solely with respect to the Fiduciary Liability Coverage Part, if purchased, the total assets of all **Plans** of such newly acquired organization exceeds twenty-five percent (25%) of the total assets of all other **Plans** of all **Companies** as reflected in their respective most recent financial statements;

Then coverage under such Coverage Part as provided in paragraph 1. above shall terminate as of the earlier of: **(i)** the end of the **Policy Period** or the **Extended Reporting Period** if exercised; or **(ii)** ninety (90) days after such acquisition, merger or consolidation.

**3.**    The Insurer may agree to extend the coverage described in paragraph 2. above if, within such ninety (90) days, the **Parent Company** provides any additional information, pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such extension of coverage. In such event, the Insurer shall issue an endorsement to this policy confirming such coverage extension.

### B.    ACQUISITION OF PARENT COMPANY

If during the **Policy Period** the **Parent Company** merges into or consolidates with another organization such that the **Parent Company** is not the surviving entity, or another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees or equivalent executives of the **Parent Company**, then coverage under this policy shall continue until the end of the **Policy Period** or the **Extended Reporting Period** if exercised, provided such coverage shall apply only with respect to any **Claim** for a **Wrongful Act** taking place prior to such merger, consolidation or acquisition.

### C.    CESSATION OF SUBSIDIARIES

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Insureds** shall continue until the end of the **Policy Period** or the **Extended Reporting Period** if exercised, provided such coverage shall apply only with respect to any **Claim** for a **Wrongful Act** taking place prior to the date such organization ceased to be a **Subsidiary**.

### D.    CESSATION OF PLANS

If before or during the **Policy Period** a **Plan** is terminated, coverage for such **Plan** and its **Insureds** under the FIDUCIARY LIABILITY COVERAGE PART, if purchased, shall continue until the end of the **Policy Period** or the **Extended Reporting Period** if exercised, with respect to any **Claim** for a **Wrongful Act** taking place before or after such termination.

**SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES**

**A.    REPRESENTATIONS**

The **Insureds** represent and acknowledge that the representations, statements and information contained in the **Application** are true and complete, are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy. The Insurer has relied upon the representations, statements and information contained in the **Application**, including materials attached thereto, completed by or on behalf of the **Parent Company** designated in Item 1. of the Declarations and such application(s) is/are made a part of this policy and operates as the Insurer's own **Application**. This policy is issued in reliance upon the truth and completeness of such representations.

**B.    SEVERABILITY**

The **Application** shall be construed as a separate application for coverage by each of the **Insureds**. If with respect to any Coverage Part the **Application** contains any material misrepresentation or omission, then such Coverage Part shall be void *ab initio* as to:

**1.**    Any **Company** to the extent such **Company** indemnifies an **Insured Person** who knew the facts that were not truthfully disclosed in the **Application**; and

**2.**    Any **Company** and its **Subsidiaries** and **Plan(s)** if an **Executive Officer** of such **Company** knew the facts that were not truthfully disclosed in the **Application**;

Whether or not such **Executive Officer** or **Insured Person** knew the **Application** contained such misrepresentation or omission. No knowledge of one **Insured Person** shall be imputed to any other **Insured Person** for purposes of this SECTION IX.

**C.    NON-RESCINDABLE COVERAGES**

The Insurer shall not have the right to rescind or void, in whole or in part, the coverage provided under any Coverage Part for any **Non-Indemnifiable Loss** incurred by the **Insured Persons**.

**SECTION X – CANCELLATION AND NONRENEWAL**

**A.    CANCELLATION**

The **Parent Company** may cancel this policy or any Coverage Part by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The Insurer may cancel this policy or any Coverage Part only for nonpayment of premium. In such event, the Insurer shall mail or deliver to the **Parent Company** written notice of cancellation stating when, not less than ten (10) days thereafter, such cancellation shall be effective. If this policy is cancelled, the Insurer will compute earned premium pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund.

**B.    NONRENEWAL**

If the Insurer decides not to renew this policy, the Insurer will mail or deliver to the **Parent Company** written notice of non-renewal at least sixty (60) days prior to the end of the **Policy Period**.

**SECTION XI – OTHER INSURANCE**

If any **Loss** resulting from any **Claim** is insured by any other valid and collectible policy issued to any **Insured**, then this policy shall apply only in excess of the amount of any deductibles, retentions, co-insurance and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

With regard to coverage for any leased employees or independent contractors who are included in the definition of **Employee**, this policy shall be specifically excess of any indemnification or insurance otherwise available to such leased employees or independent contractors from the applicable leasing company or any other source.

**SECTION XII – SUBROGATION**

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds**' rights of recovery, including without limitation any right of recovery from the **Company** for **Loss** incurred by **Insured Persons** which is indemnifiable by the **Company**. The **Insureds** shall execute all papers required and shall do everything  necessary to secure and preserve such rights, including the execution of such documents necessary to enable

the Insurer effectively to bring suit in the name of the **Insureds**. In any subrogation claim against the **Company** to enforce the **Insured Persons**' right of indemnification, the shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification to the fullest extent permitted by law, and the Insurer's recovery from the **Company** for such **Loss** shall not exceed the Retention applicable to the **Company** for such **Loss**. The Insurer shall not exercise its right of subrogation against an **Insured Person** with respect to payments under any Coverage Part unless and to the extent one of the following respective exclusions in such Coverage Part applies to such **Insured Person**:

| Coverage Part | Exclusions |
|---|---|
| Directors and Officers and Company Liability | SECTION IV I. and J. |
| Employment Practices and Third Party Discrimination Liability | SECTION IV F. and G. |
| Fiduciary Liability | SECTION IV D. |

Any such recoveries, less the cost of obtaining them, will be distributed in the following priority:

**A.** First, to the **Insureds** until they are reimbursed for any **Loss** that they sustain that exceeds their available insurance;

**B.** Second, to any insurers of any policies specifically excess of this policy until they are reimbursed for any **Loss** paid under such policies;

**C.** Third, to the Insurer until the Insurer is reimbursed for any payment made under this policy;

**D.** Fourth, to the **Insureds**, until they are reimbursed for their payment of any applicable Retention.

## SECTION XIII – ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement issued to form a part of this policy.

The titles and headings to the various sections, subsections and endorsements of this policy, as well as the schedule of endorsements attached to this policy, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## SECTION XIV – PAYMENT PRIORITY

If the **Loss** due and owing by the Insurer under a Coverage Part exceeds the then-remaining Limit of Liability applicable to such **Loss**, the Insurer shall pay such **Loss**, subject to the applicable Limits of Liability, in the following priority:

**A.** First, the Insurer shall pay such **Loss** which is **Non-Indemnifiable Loss** incurred by **Insured Persons**;

**B.** Second, the Insurer shall pay all other **Loss** covered under the Coverage Part.

Subject to the foregoing paragraph, the Insurer shall, upon receipt of a written request from the **Parent Company**, delay any payment of **Loss** due and owing to the **Company** until such time as the **Parent Company** designates, provided the Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

## SECTION XV – TERRITORY AND VALUATION

Coverage under any Coverage Part shall extend to **Wrongful Acts** taking place, **Loss** incurred, or **Claims** made anywhere in the world, to the extent legally permitted.

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

## SECTION XVI – AUTHORIZATION CLAUSE

By acceptance of this policy, the **Parent Company** agrees to act on behalf of the **Insureds** with respect to giving and receiving of notices to and from the Insurer as provided herein, the cancellation of this policy in whole or in part, paying premiums, Retentions and Coinsurance and receiving any return premiums that may become due under this policy, and agreeing to endorsements. The **Insureds** agree that the **Parent Company** shall act on their behalf with respect to such matters.

**SECTION XVII – BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this policy.

In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the **Company** and the **Insureds** hereby: **(1)** waive and release any automatic stay or injunction which may apply in such proceeding to this policy or its proceeds under such bankruptcy law; and **(2)** agree not to oppose or object to any efforts by the Insurer, the **Company** or any **Insured** to obtain relief from any such stay or injunction.

**SECTION XVIII – EXCLUSIONS**

The Insurer shall not be liable under any purchased Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

**A.**    Based upon, arising out of, or in any way involving any **Unauthorized Access**, **Potential Unauthorized Access**, **Unintentional Data Compromise** or any computer security incident, intrusion, breach, compromise, theft, loss or use of the **Company's Electronic Communications System**.



**EVANSTON INSURANCE COMPANY**

# DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART

**TABLE OF CONTENTS**

SECTION I – INSURING AGREEMENTS ..................................................................................................... 2

A.    INSURED PERSON LIABILITY COVERAGE ........................................................................................ 2

B.    COMPANY REIMBURSEMENT COVERAGE ...................................................................................... 2

C.    COMPANY LIABILITY COVERAGE ...................................................................................................... 2

D.    DERIVATIVE DEMAND INVESTIGATION COSTS .............................................................................. 2

SECTION II – EXTENSIONS ....................................................................................................................... 2

SECTION III – DEFINITIONS ....................................................................................................................... 3

SECTION IV – EXCLUSIONS ...................................................................................................................... 6



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART

**SECTION I – INSURING AGREEMENTS**

**A.    INSURED PERSON LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.

**B.    COMPANY REIMBURSEMENT COVERAGE**

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.

**C.    COMPANY LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Company** all **Loss** which the **Company** becomes legally obligated to pay on account of any **Claim** first made against the **Company** during the **Policy Period** or any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.

**D.    DERIVATIVE DEMAND INVESTIGATION COSTS**

The Insurer shall pay on behalf of the **Company** all **Investigative Costs** on account of a **Securityholder Derivative Demand** first received by the **Company** during the **Policy Period** or any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**, provided: **(i)** the Insurer's maximum liability for all **Investigative Costs** covered under this INSURING AGREEMENTS D. shall be the respective Sublimit amount stated in the Coverage Schedule in Item 5. of the Declarations, which is part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7. of the Declarations and the Aggregate Limit of Liability for this Coverage Part; and **(ii)** no Retention shall apply to this INSURING AGREEMENTS D.

**SECTION II – EXTENSIONS**

**A.    PUBLIC COMPANY COVERAGE QUOTE**

If during the **Policy Period** the **Parent Company**:

**1.**    Gives prior written notice to the Insurer that a **Company** intends to publicly offer or sell any debt or equity securities or to otherwise become a publicly-held organization described in Section 12(g) of the Securities and Exchange Act of 1934, as amended (hereafter Public Transaction); and

**2.**    Provides to the Insurer all information requested by the Insurer with respect to the Public Transaction;

The Insurer shall provide to the **Company** as soon as practicable a quotation for coverage under the Insurer's Public Company Directors and Officers Insurance Policy, provided such coverage if purchased shall be subject to such terms, conditions, limits, retentions and premium as the Insurer may require in its sole discretion. This SECTION II A. shall not impact the Insurer's ability to cancel or non-renew this policy as provided in SECTION X of the GENERAL TERMS AND CONDITIONS.

**B.    OUTSIDE POSITION COVERAGE**

Subject to the other terms and conditions applicable to this Coverage Part, INSURING AGREEMENTS A. and INSURING AGREEMENTS B. include coverage for **Insured Persons** while serving in an **Outside Position**. Such coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** in which the **Insured Person** serves in the **Outside Position**. Payment by the Insurer or any affiliate of the Insurer under another policy as a result of a **Claim** against an **Insured Person** in an **Outside Position** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this policy with respect to such **Claim**.

**C.    ADDITIONAL NON-INDEMNIFIABLE LOSS AGGREGATE LIMIT OF LIABILITY**

The Additional **Non-Indemnifiable Loss** Aggregate Limit of Liability stated in Item 8.B. of the Declarations shall apply to any covered **Non-Indemnifiable Loss** which would be paid except for the exhaustion of the total of all available Limits of Liability, including any other applicable Limits, under this Coverage Part. This Additional **Non-Indemnifiable Loss** Aggregate is the most the Insurer will pay in any one **Policy Period** regardless of the number of **Claims** made. In no event will this additional limit apply until the entire policy's Combined Aggregate Limit of Liability is exhausted. Provided, however, there shall be no Additional **Non-Indemnifiable Loss** Aggregate Limit of Liability if such Limit amount is stated in Item 8.B. of the Declarations to be $0 or Not Purchased.

**D.    SUBPOENA EXTENSION AND LIMIT**

Solely with respect to INSURING AGREEMENTS A. the Insurer shall pay on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** becomes legally obligated to pay on account of only those **Claims** as are included in Item 8. of the definition of **Claim**, first made against the **Insured Persons** during the **Policy Period** or any applicable **Extended Reporting Period**, if purchased.

The applicable Limit of Liability stated in Item 8.C. of the Declarations shall apply to such **Claims** which is the Insurer's maximum Limit of Liability for all **Loss** on account of such **Claims** as are included in Item 8. of the definition of **Claim**; provided there shall be no coverage for any such **Claim** as is included in Item 8. of the definition of **Claim** if such Limit amount is stated in Item 8.C. of the Declarations to be $0 or Not Purchased.

**E.    HIPAA CLAIMS EXTENSION AND LIMIT**

The Insurer shall pay on behalf of the **Insureds** all **Claim Expenses** and **Civil Penalties** for which the **Insureds** become legally obligated to pay on account of a **HIPAA Claim** first made against the **Insureds** during the **Policy Period** or any **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.

The applicable Limit of Liability stated in Item 8.D. of the Declarations shall apply to such **HIPAA Claims** which is the Insurer's maximum Limit of Liability for all **Claim Expenses** and **Civil Penalties** arising from all **HIPAA Claims**; provided there shall be no coverage for any such **HIPAA Claim** if such Limit amount is stated in Item 8.D. of the Declarations to be $0 or Not Purchased.

**F.    DILUTION CLAIMS EXTENSION AND LIMIT**

The Insurer shall pay on behalf of the **Insureds** all **Loss** which the **Company** becomes legally obligated to pay on account of a **Dilution Claim** first made against the **Insureds** during the **Policy Period** or any **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.

The applicable Limit of Liability stated in Item 8.E. of the Declarations shall apply to such **Dilution Claims** which is the Insurer's maximum Limit of Liability for all **Loss** arising from all **Dilution Claims**; provided there shall be no coverage for any such **Dilution Claim** if such Limit amount is stated in Item 8.E. of the Declarations to be $0 or Not Purchased.

**SECTION III – DEFINITIONS**

When used in this Coverage Part, the following terms are defined as follows:

**A.    Civil Penalties** means only those civil penalties imposed upon an **Insured** for violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, or the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended, arising on account of a **HIPAA Claim**.

**B.     Claim** means:

**1.**     A written demand against an **Insured** for monetary damages or non-monetary relief, including a written demand that an **Insured** toll or waive a statute of limitations, commenced by such **Insured's** receipt of such written demand;

**2.**     A civil proceeding against an **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**;

**3.**     A criminal proceeding against an **Insured** commenced by such **Insured's** receipt of an indictment, information or similar document;

**4.**     An administrative or regulatory proceeding against an **Insured** commenced by such **Insured's** receipt of a notice of charges or similar document;

**5.**     A civil, criminal, administrative or regulatory investigation of an **Insured Person** commenced by the service upon or other receipt by such **Insured Person** of a target letter or other written notice from the investigating authority identifying by name such **Insured Person** as an individual against whom a proceeding may be commenced;

**6.**     An official request for the **Extradition** of an **Insured Person** or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**, commenced by such **Insured Person's** receipt of such request or warrant; or

**7.**     An arbitration, mediation or other alternative dispute resolution proceeding against an **Insured** commenced by such **Insured's** receipt of a demand for such a proceeding;

For a **Wrongful Act**, including any appeal therefrom.

**8.**     Solely with respect to INSURING AGREEMENTS A. and subject to SECTION II D., **Claim** also means any request, demand or subpoena by a regulatory, administrative, governmental or similar authority to interview or depose an **Insured Person**, or to produce documents by an **Insured Person**, in his or her capacity as such commenced by such **Insured Person's** receipt of such a request, demand or subpoena; or

**9.**     Solely with respect to INSURING AGREEMENTS D., **Claim** only means a **Securityholder Derivative Demand**.

**C.     Dilution Claim** means a **Claim** brought by an **Insured Person** as a securities holder of the **Company** and arising out of the actual or alleged dilution of such **Insured Person's** ownership interest in the **Company**, but only if: **(a)** such **Claim** is in connection with an actual or alleged: **(i)** sale of all or substantially all of the **Company's** property and assets under applicable state law; **(ii)** merger of the **Company** with or into another entity under applicable state law; **(iii)** consolidation of the **Company** with one or more other entities into a new entity under applicable state law; or **(iv)** the initial public offering of the **Company's** securities; and **(b)** such **Insured Person** is not serving as an **Insured Person** on the date such **Dilution Claim** is first made.

**D.     Financial Institution** means any entity that provides financial or insurance services for or sells financial or insurance products to its clients, customers or members, including without limitation a bank, trust company, credit union, investment company, insurance company, securities broker/dealer, insurance broker/agent and any other entity whose business involves holding, investing, lending or dealing in money, securities or other financial or insurance products.

**E.     HIPAA Claim** means a **Claim** for a **Wrongful Act** alleging, arising out of, based upon or attributable to a violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended.

**F.     Insured Person**, whether in the singular or plural, means:

**1.**     Any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

**2.**     Any natural person not described in Item 1. above who was, now is or shall during the **Policy Period** become an **Employee** of the **Company**; and

**3.**     Any natural person described in Item 1. above while serving in an **Outside Position**;

Provided that an **Employee** described in Item 2. above shall not be considered an **Insured Person** for purposes of SECTION II B., OUTSIDE POSITION COVERAGE, of this Coverage Part and EXCLUSIONS C. or D. in SECTION IV of this Coverage Part.

**G.**    **Insured**, whether in the singular or plural, means the **Insured Persons** and, solely with respect to INSURING AGREEMENTS B., INSURING AGREEMENTS C. AND INSURING AGREEMENTS D., the **Company**.

**H.**    **Investigative Costs** means reasonable and necessary fees (including attorney's fees and expert's fees) and expenses (other than wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Company** whether it is in the best interest of the **Company** to prosecute the allegations in a **Securityholder Derivative Demand**.

**I.**    **Loss** means the total amount the **Insured** becomes legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses** and civil money penalties assessed against an **Insured**: **(i)** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B); or **(ii)** for a violation of any federal, state, local or foreign law if such violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured**, including without limitation the jurisdiction in which the **Company**, the **Insured Person**, the Insurer, this policy or such **Claim** is located.

Solely with respect to INSURING AGREEMENTS D, **Loss** only means **Investigative Costs**.

**Loss** does not include any of the following:

**1.**    Any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

**2**.    Taxes, sanctions, fines or penalties imposed by law, other than civil money penalties expressly referenced above;

**3.**    Any amount incurred by the **Company** that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets;

**4**.    Any amount incurred by the **Company** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief;

**5.**    Any disgorgement or restitution of ill-gotten gain or rescissionary damages; or

**6.**    Matters uninsurable under the law pursuant to which this policy is construed.

**J.**    **Outside Entity** means:

**1.**    Any organization chartered and operated as a not-for-profit organization;

**2.**    Any for-profit organization in which the **Company** owns an equity interest, provided such organization is neither a **Financial Institution** nor an organization whose securities are publicly owned or traded; or

**3**.    Any other organization specifically included as an **Outside Entity** by endorsement to this policy; provided such organization is not included in the definition of **Company**.

**K.**    **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person**, if service in such position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by the **Company**.

**L.**    **Personal Injury** means false arrest, wrongful detention or imprisonment, malicious prosecution, defamation including libel and slander, invasion of privacy or wrongful entry or eviction.

**M.**    **Securityholder Derivative Demand** means receipt by the **Insured** of:

    **1.**    Any written demand, by a securityholder of a **Company**, upon the Board of Directors or Board of Managers of such **Company**, to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

    **2.**    Any lawsuit by a securityholder of a **Company**, brought derivatively on behalf of such **Company**, against an **Insured Person** for a **Wrongful Act** without first making a demand as described in Item 1. above.

**N.**    **Wrongful Act** means:

    **1.**    Any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any **Insured Person** in their capacity as such or in an **Outside Position**, or with respect to Insuring Agreement C, by the **Company**; or

    **2.**    Any matter claimed against any **Insured Person** solely by reason of their serving in such capacity or in an **Outside Position**.

## SECTION IV – EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

**A.**    Based upon, arising out of, or in any way involving any fact, circumstance or **Wrongful Act** which has been the subject of any written notice given prior to inception of this policy under any prior directors and officers liability or comparable insurance policy or coverage part;

**B.**    Based upon, arising out of, or in any way involving any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date stated in the Coverage Schedule in Item 5. of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Act** alleged or underlying such prior **Claim**;

**C.**    Brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

    **1.**    A **Claim** that is a derivative action brought or maintained on behalf of the **Company** by one or more persons who are not **Insured Persons** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company** or any **Insured Person** or if the only such solicitation, assistance or participation by the **Company** and **Insured Persons** is: **(i)** solely pursuant to, or in compliance with, a subpoena or similar legal process; or **(ii)** protected pursuant to any whistleblower statute;

    **2.**    A **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part;

    **3.**    A **Claim** brought by an **Insured Person** who has not served as an **Insured Person** for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

    **4.**    A **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee for such **Company**, or any assignee of such trustee, examiner, receiver, or similar official or creditors committee; or

    **5.**    A **Claim** by or on behalf of the **Company** brought and maintained in any non-common law jurisdiction outside the United States;

**D.**    For a **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor or trustee of such **Outside Entity**, provided this exclusion shall not apply to:

    **1.**    A **Claim** that is a derivative action brought or maintained on behalf of such **Outside Entity** by one or more persons who are not directors, officers, managers or trustees of the **Outside Entity** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** or if the only such solicitation, assistance or participation by the **Company**, any **Insured Person**, the **Outside Entity** or

any director, officer, manager or trustee of the **Outside Entity** is: **(i)** solely pursuant to or in compliance with a subpoena or similar legal process; or **(ii)** protected pursuant to any whistleblower statute;

2. A **Claim** for an employment-related **Wrongful Act** brought or maintained by a director, officer, manager, governor or trustee of such **Outside Entity**;

3. A **Claim** brought by a director, officer, manager, governor or trustee of such **Outside Entity** who has not served as such for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation by, or active assistance or participation of, such **Outside Entity** or any other director, officer, manager, governor or trustee of such **Outside Entity** who is serving or has served as such within such two (2) year period;

4. A **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee for such **Outside Entity**, or any assignee of such trustee, examiner, receiver, similar official or creditors committee; or

5. A **Claim** by or on behalf of the **Outside Entity** brought and maintained in any non-common law jurisdiction outside the United States;

E. For an actual or alleged violation of the responsibilities, obligations or duties imposed by Employee Retirement Income Security Act of 1974, as amended, or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the **Company**;

F. For bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any allegations of mental anguish or emotional distress in a **Claim** against **Insured Persons** for **Personal Injury**;

G. Based upon, arising out of or in any way involving:

1. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

2. Any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

However, this exclusion shall not apply to:

a. **Non-Indemnifiable Loss**; or

b. Any **Claim** brought directly, derivatively or otherwise by one or more securityholders of a **Company** in their capacity as such;

H. Based upon, arising out of or in any way involving any **Wrongful Act** committed by any **Insured Person** serving in any position or capacity in any entity, other than the **Company** or **Outside Entity**, even if the **Company** directed or requested the **Insured Person** to serve in such other position or capacity;

I. Based upon, arising out of or in any way involving any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

J. Based upon, arising out of or in any way involving an **Insured Person** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if: **(i)** a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage; or **(ii)** such **Insured** agrees to repay to the **Company** such profit, remuneration or financial advantage;

K. Based upon, arising out of or in any way involving: **(i)** the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities; or **(ii)** the actual or alleged violation of any federal, state, local or common or foreign law relating to debt or equity securities; provided this exclusion shall not apply to any **Claim**:

1.   Based upon, arising out of or in any way involving the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities in a private-placement transaction exempt from registration under the Securities Act of 1933, as amended;

2.   Based upon, arising out of or in any way involving the failure of the **Company** to undertake or successfully complete a public offering of securities, including any "roadshow" disclosures or other activities in connection with such an unsuccessful public offering; or

3.   If prior to such purchase or sale, or offer or solicitation of an offer to purchase or sell, securities: **(i)** the Insurer agrees in writing to delete this exclusion with respect to such purchase, sale, offer or solicitation; and **(ii)** the **Company** pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such deletion;

L.   Solely with respect to INSURING AGREEMENTS C.:

1.   For any actual or alleged liability of the **Company** under any written or express contract or agreement, except to the extent that the **Company** would have been liable in the absence of such contract or agreement;

2.   For **Personal Injury**;

3.   For taxes;

4.   For the rendering of or failure to render professional services; provided this exclusion shall not apply to any **Claim** by one or more securityholders of the **Company** in their capacity as such;

5.   Based upon, arising out of or in any way involving any actual or alleged plagiarism, piracy or unfair competition or infringement, dilution or misappropriation of any copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade secrets or other intellectual property rights, or the unauthorized disclosure of or access to confidential information; or

6.   Based upon, arising out of or in any way involving the actual or alleged malfunction, defect or failure of any goods or products manufactured, distributed, sold, installed, marketed, developed or processed by the **Company**; provided this exclusion shall not apply to any **Claim** by one or more securityholders of the **Company** in their capacity as such; or

M.   Which constitutes an **Employment Practices Claim** or a **Third Party Discrimination Claim** or a **Wage and Hour Claim**, or any **Claim** made against any **Insured** based upon or arising out of any actual or alleged unlawful discrimination or harassment.

For the purpose of determining the applicability of EXCLUSIONS I. and J. set forth in this SECTION IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under INSURING AGREEMENTS C. only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

**MANAGEMENT LIABILITY**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

**TABLE OF CONTENTS**

SECTION I – INSURING AGREEMENTS ................................................................................................................. 2

A.    EMPLOYMENT PRACTICES LIABILITY COVERAGE ....................................................................... 2

B.    THIRD PARTY DISCRIMINATION LIABILITY COVERAGE ................................................................ 2

SECTION II – EXTENSIONS ................................................................................................................................... 2

SECTION III - DEFINITIONS .................................................................................................................................. 2

SECTION IV – EXCLUSIONS ................................................................................................................................. 4



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

## SECTION I – INSURING AGREEMENTS

**A.    EMPLOYMENT PRACTICES LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or during any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Employment Practice** taking place before or during the **Policy Period**.

**B.    THIRD PARTY DISCRIMINATION LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Third Party Discrimination Claim** first made against the **Insureds** during the **Policy Period** or during any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**. Provided, however, there shall be no coverage for **Third Party Discrimination Claims** if the Third Party Discrimination Liability limits stated in Item 5.B. of the Declarations are shown to be $0 or Not Purchased.

## SECTION II – EXTENSIONS

**A.    WAGE AND HOUR CLAIMS EXTENSION AND LIMIT**

The Insurer shall pay on behalf of the **Insureds** all **Claim Expenses** which the **Insureds** incur on account of any **Wage and Hour Claims** first made against the **Insureds** during the **Policy Period** or during any applicable **Extended Reporting Period**, if purchased, for a **Wage and Hour Wrongful Act** taking place before or during the **Policy Period**.

The Insurer's maximum aggregate liability under this Coverage Part for all covered **Claim Expenses** on account of all **Wage and Hour Claims** shall be the Sublimit amount stated in the Coverage Schedule in Item 5.B. of the Declarations. Such Sublimit shall be part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7. of the Declarations and the Aggregate Limit of Liability for this Coverage Part. Provided, however, there shall be no coverage for **Wage and Hour Claims** if the **Wage and Hour Claims** Sublimit stated in Item 5.B. of the Declarations is shown to be $0 or Not Purchased.

## SECTION III – DEFINITIONS

When used in this Coverage Part, the following terms are defined as follows:

**A.    Claim**, for purposes of the definitions of **Employment Practices Claim** and **Third Party Discrimination Claim** in the General Terms and Conditions, means:

    **1.**    A written demand against an **Insured** for monetary damages or non-monetary relief, including a written demand that an **Insured** toll or waive a statute of limitations, commenced by such **Insured's** receipt of such written demand;

    **2.**    A civil proceeding against an **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**;

    **3.**    An administrative or regulatory proceeding against an **Insured**, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, commenced by such **Insured's** receipt of a notice of charges or similar document;

    **4.**    A civil, administrative or regulatory investigation of an **Insured** commenced by the service upon or other receipt by such **Insured** of a target letter or other written notice from the investigating authority identifying by name such **Insured** as an individual or entity against whom a proceeding may be commenced; or

    **5.**    An arbitration, mediation or other alternative dispute resolution proceeding against an **Insured**, commenced by such **Insured's** receipt of a demand for such a proceeding;

For a **Wrongful Act**, including any appeal therefrom; provided **Claim** does not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

**B.**    **Independent Contractor** means any natural person who is not an **Employee** and who is working for a **Company** in the capacity of an independent contractor pursuant to an express contract or agreement with the **Company** which governs the nature of such person's engagement.

**C.**    **Insured Persons**, whether in the singular or plural, means:

    **1.**    Any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager**, officer, **Employee** (including employed lawyers solely in their capacity as an **Employee**), advisory director, or member of a duly constituted committee or board of the **Company**, or their functional equivalent; and

    **2.**    Any **Independent Contractor**, but only if the **Company** agrees in writing within thirty (30) days after the **Claim** is made to provide indemnification to such **Independent Contractor** for any **Loss** arising out of such **Claim**; provided any coverage under this Coverage Part for any such **Independent Contractor** shall be specifically excess of any indemnification or insurance otherwise available to such **Independent Contractor** from any other source.

**D.**    **Insureds**, whether in the singular or plural, means the **Insured Persons** and the **Company**.

**E.**    **Loss** means the total amount the **Insureds** become legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including back pay, front pay and punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses**, prevailing plaintiff attorney's fees awarded pursuant to any federal, state or local statutory or common law or Section 1988 of the Civil Rights Act, and liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act or the Family Medical Leave Act.

The insurability of such punitive, exemplary, liquidated and multiple damages or attorneys' fees shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following:

    **1.**    Any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

    **2.**    Taxes, sanctions, fines or penalties imposed by law; or

    **3.**    Matters uninsurable under the law pursuant to which this policy is construed.

**F.**    **Wage and Hour Claim** means a **Claim** to the extent such **Claim** is for a **Wage and Hour Wrongful Act**. Provided, however, there shall be no coverage for **Wage and Hour Claims** if the **Wage and Hour Claims** Sublimit stated in Item 5.B. of the Declarations is shown to be $0 or Not Purchased.

**G.**    **Wage and Hour Wrongful Act** means an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act) or any other law concerning wage and hour practices, including but not limited to any law addressing off-the-clock work, providing rest or meal periods, reimbursement of expenses, classification of employees as exempt or non-exempt, timely payment of wages, conversions, unjust enrichment, or unfair business practices.

**H.**    **Wrongful Act** means:

1.  With respect to INSURING AGREEMENTS A., any **Wrongful Employment Practice**;

2.  With respect to INSURING AGREEMENTS B.: **(i)** any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any of the **Insured Persons** in their capacity as such, or by the **Company**; or **(ii)** any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity; and

3.  With respect to EXTENSIONS A., any **Wage and Hour Wrongful Act**.

## SECTION IV – EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

**A.**  Based upon, arising out of, or in any way involving any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given prior to inception of this policy under any prior employment practices liability or comparable insurance policy or coverage part;

**B.**  Based upon, arising out of, or in any way involving any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date stated in the Coverage Schedule in Item 5. of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Act** alleged or underlying such prior **Claim**;

**C.**  For an actual or alleged violation of the responsibilities, obligations or duties imposed by:

1.  Any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law, including without limitation the United States Longshoreman's and Harbor Workers' Compensation Act, the Jones Act or the Federal Employers' Liability Act;

2.  The Employee Retirement Income Security Act of 1974, as amended, except Section 510 thereof;

3.  The National Labor Relations Act;

4.  The Worker Adjustment and Retraining Notification Act;

5.  The Consolidated Omnibus Budget Reconciliation Act of 1985;

6.  The Occupational Safety and Health Act;

7.  The Racketeer Influenced and Corrupt Organizations Act;

8.  The Federal False Claims Act; or

9.  Rules or regulations promulgated under any of such statutes or laws, amendments to such statutes or laws or similar provisions of any other federal, state, local or foreign statutory law or common law;

But this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law, rule or regulation or for any other actual or alleged violation of any whistleblower statute or law;

**D.**  For bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible or intangible property including loss of use thereof; provided this exclusion shall not apply to any **Claim** for emotional distress, mental anguish or humiliation;

**E.**  Based upon, arising out of, or in any way involving any actual or alleged breach of any contract or agreement, provided such contract or agreement specifies the terms of the **Company's** engagement of an **Independent Contractor**;

**F.**  Based upon, arising out of, or in any way involving any deliberately fraudulent or deliberately criminal act or omission committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent or criminal act or omission;

**G.**  Based upon, arising out of, or in any way involving an **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage;

**H.**  Based upon, arising out of, or in any way involving the employment reinstatement or continued employment of the claimant by the **Company** or, if the **Company** has the option pursuant to an adjudication or settlement to reinstate

the claimant as an **Employee** but fails to do so, any **Loss** constituting front pay, future damages or other future economic relief or the equivalent thereof with respect to such claimant; or

**I.**     If such **Loss** constitutes:

**1.**     Any amount incurred by the **Insureds** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief, including without limitation any costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans with Disabilities Act and any amendments thereto or any similar federal, state, local or foreign statute, regulation, or common laws;

**2.**     Compensation earned by the claimant in the course of employment but not paid by the **Company**, including any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days, sick days, prerequisites, stock options or similar rights; provided this exclusion shall not apply to any back pay or front pay or any additional compensation allegedly due as a result of alleged discrimination or wrongful dismissal, wrongful discharge or wrongful termination of employment;

**3.**     Amounts owing under or assumed by the **Insureds** pursuant to a written or other express contract or agreement with or written severance obligation of the **Company**; but this exclusion shall not apply: **(i)** if and to the extent that liability would have attached to the **Insureds** in the absence of the written contract with or obligation of the **Company**; or **(ii)** to the **Insured's** contractual liability to indemnify an employment agency or employee leasing company for the **Wrongful Acts** of **Insureds** which injure or harm temporary or leased employees of such agency or company; or

**4.**     Medical, insurance or other benefits or securities of the **Company** (or the equivalent value thereof) to which the claimant allegedly was entitled, including without limitation benefits to which the claimant would have been entitled had the **Company** provided the claimant with a continuation or conversion of insurance;

Provided this exclusion shall not apply to **Claim Expenses**.

For the purpose of determining the applicability of EXCLUSIONS F. and G. set forth in this SECTION IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.



**MANAGEMENT LIABILITY**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT - CALIFORNIA

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART
EXCESS MANAGEMENT LIABILITY INSURANCE POLICY

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the **Parent Company or Organization**, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Todd Croutch, Fraser Watson Croutch LLP, 100 West Broadway, Suite 650, Glendale, CA 91210-1201 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Parent Company or Organization** or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as to whom the said officer is authorized to mail such process or a true copy thereof.

Pursuant to Section 1772, et seq., of the California Insurance Code, a surplus line insurer may be sued upon any cause of action arising in this state under any surplus line insurance contract made by it, or any evidence of insurance issued or delivered by the surplus line broker, pursuant to the procedures set forth in Sections 1610 to 1620, inclusive.

All other terms and conditions remain the same.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## HEALTHCARE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART

It is agreed:

1. The Insurer shall not be liable under the Coverage Part referenced above to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** based upon, arising out of, or any way involving the rendering of or failure to render professional services in connection with an **Insured's** business as a provider of medical services, including without limitation:

   **a.** providing medical, surgical, dental, psychiatric or nursing treatment, care, diagnosis or services, including the furnishing of food or beverage in connection therewith;

   **b.** providing testing services used in the diagnosis, monitoring, and/or treatment of disease or any other medical condition;

   **c.** furnishing or dispensing drugs or medical, dental or surgical supplies or appliances;

   **d.** handling or conducting postmortem examination on humans;

   **e.** providing veterinary services;

   **f.** in connection with the **Insured's** business as a **Managed Care Organization**, establishing provider networks, contracting with other healthcare providers, processing, investigating, adjusting, or managing claims for benefits or coverage under healthcare plans, managing medical cases, or enrolling, designing, administering, managing, advertising, marketing or selling healthcare benefit plans; or

   **g.** giving advice in connection with any of the above;

   provided this exclusion shall not apply to any **Provider Selection Practice**.

2. The exclusion in the definition of **Loss** for taxes, fines or penalties shall not apply to:

   **a.** civil fines or penalties assessed against an **Insured** for violation of the Emergency Medical Treatment and Active Labor Act, as amended (EMTALA), if such violation is not knowing or willful; provided the Insurer's maximum liability under the above-referenced Coverage Part for all such fines or penalties shall be the Sublimit Amount set forth below, which further limits and does not increase the Insurer's maximum liability under this policy;

      Sublimit Amount:  $50,000

**b.** the ten percent (10%) excise tax assessed by the Internal Revenue Service on an **Insured Person** who is an "Organizational Manager" (as defined in Section 4958 of the Internal Revenue Code of 1986, as amended) as a result of such **Insured Person's** participation in an "excess benefit transaction" (as defined in such Section 4958); provided the Insurer's maximum liability under the above-referenced Coverage Part for all such excise taxes shall be the Sublimit Amount set forth below, which further limits and does not increase the Insurer's maximum liability under this policy.

Sublimit Amount:  $50,000

3. For purposes of the above-referenced Coverage Part, the definition of **Employee** includes any natural person otherwise described in such definition who is a licensed physician.

4. When used in this Endorsement, the following terms are defined as follows:

**Managed Care Organization** means a Health Maintenance Organization (HMO), Preferred Provider Organization (PPO), Medical Service Organization (MSO), Physician Hospital Organization (PHO), or any similar organization engaged in the management of medical care for a **Managed Care Person(s)**.

**Managed Care Person** means any natural person for whom a **Managed Care Organization** has contracted to pay or reimburse all or part of the costs of necessary healthcare services pursuant to a written description of coverage.

**Provider Selection Practice** means the process of evaluating, by members of a formal duly constituted professional review board or committee, any practicing healthcare professional providing medical services, including but not limited to physicians, surgeons, dentists, residents, fellows and doctorate professionals independent from or affiliated with the **Company**, for the purpose of selection, credentialing or performing peer review of, contracting with, or privileging, such healthcare professional, provided such process is performed solely for the **Company**.

All other terms and conditions remain the same.

**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## IRCA SUBLIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

It is agreed:

1. The exclusion for fines or penalties imposed by law as set forth in the definition of **Loss** in the above-referenced Coverage Part shall not apply to any fine or penalty assessed against an **Insured** for violation of the Immigration Reform and Control Act, as amended ("IRCA"), if such violation is not knowing or willful.

2. The Insurer's maximum aggregate liability under the above-referenced Coverage Part for all fines or penalties described above and for all other **Loss** on account of any **Claim** for an actual or alleged violation of IRCA, combined, shall be the Sublimit Amount set forth below, which further limits and does not increase the Insurer's maximum liability under this policy.

<u>Sublimit Amount</u>

$ $50,000

All other terms and conditions of this policy remain unchanged.

MML 1216 05 10



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is agreed that the following is added:

**Certified Acts of Terrorism**

It is hereby understood and agreed that this policy includes coverage on account of any **Claim** for **Wrongful Acts** or **Wrongful Employment Practices** applicable to Coverage Part(s) of this policy resulting from any **Certified Act of Terrorism**.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The federal Terrorism Risk Insurance Act set forth the following criteria for a **Certified Act of Terrorism**:

    **1.**    The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **2.**    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If the aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and the Insurer has met the Insurer's deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of the Treasury.

The terms and limitations of any terrorism coverage provided therewith, or the inapplicability or omission of terrorism exclusion, do not serve to create coverage for any **Loss** which would otherwise be excluded under this policy or applicable Coverage Part(s).

All other terms and conditions remain unchanged.

MANAGEMENT LIABILITY
POLICY NUMBER: MKLV5MML000039



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEVERABILITY CHANGES

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

**SCHEDULE**

<u>Individuals</u>

1. President
2. CEO
3. CFO

In consideration of the premium paid, it is hereby understood and agreed that SECTION IX - REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES, B. SEVERABILITY, Item **2**. is deleted and replaced with the following:

**2.** Any **Company** or **Organization** and its **Subsidiaries** and **Plan(s)** if an individual listed in the Schedule above knew the facts that were not truthfully disclosed in the **Application**;

All other terms and conditions remain unchanged.

MML 1226 01 16

Page 1 of 1



**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFENSE AND SETTLEMENT CHANGES

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

In consideration of the premium paid, it is hereby understood and agreed that **SECTION IV - DEFENSE**, **SETTLEMENT AND COOPERATION**, **A. DEFENSE AND SETTLEMENT**, Item **4.c.** is deleted and replaced as follows:

**c.**  One-Hundred  percent (100%) for the DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART;

Eighty percent (80%) for the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART;

Eighty percent (80%) for the FIDUCIARY LIABILITY COVERAGE PART;

all covered **Loss** incurred thereafter on account of such **Claim**, provided such Coverage Part is purchased and attached to this policy.

All other terms and conditions remain unchanged.



MANAGEMENT LIABILITY
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## REGULATORY ENDORSEMENT

This endorsement modifies all insurance provided under the following for which a check mark (X) appears:

- ☒ DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
- ☐ DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
- ☒ EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
- ☒ FIDUCIARY LIABILITY COVERAGE PART

### SCHEDULE

Applicable

| | | | |
|---|---|---|---|
| ☑ | B.1. | Sublimit Amount: | $200,000 |
| ☐ | B.2. | Retention Amount: | |
| ☑ | B.3. | Coinsurance Percentage: | 25% |

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**A.** The provision(s) marked as applicable in the Schedule above shall apply to coverage under the Coverage Part(s) for which a check mark (X) appears above for any **Claim** brought or maintained by or on behalf of:

  **1.** Any **Regulatory Agency**, whether the **Claim** is made in the name or right of, or for the benefit of, any other person or entity;

  **2.** Any person or entity acting at the behest of, with the participation of, or for the benefit of, in whole or in part, any **Regulatory Agency**; or

  **3.** Any person or entity against whom any **Regulatory Agency** has asserted any **Claim** if such **Claim** is related to or arises from a **Claim** brought or asserted against such other person or entity by the **Regulatory Agency**.

**B.** The following provision(s) shall apply if marked as applicable in the Schedule above:

  **1.** The Insurer's maximum aggregate liability for all covered **Loss** on account of all **Claims** described in Item **A.** above and first made during the **Policy Period** or during any applicable **Extended Reporting Period**, if purchased, shall be the Sublimit Amount shown in the Schedule above. This provision further limits and does not increase the Insurer's maximum liability under this insurance.

  **2.** Solely with respect to each **Claim** described in Item **A.** above, the applicable Retentions stated in the Declarations for the above-referenced Coverage Part(s) are amended to the Retention Amount shown in the Schedule above.

  **3.** Solely with respect to **Loss** (other than **Non-Indemnifiable Loss**) excess of the applicable Retention for any **Claim** described in Item **A.** above, the **Parent Company** or **Parent Organization** shall bear uninsured at its own risk the percentage of each **Loss** specified as the Coinsurance Percentage in the Schedule above and the Insurer's liability for such **Loss** shall apply only to the remaining percentage of such **Loss**.

**C. SECTION III – DEFINITIONS** is amended by the addition of the following definition:

  **Regulatory Agency** means any national, state, local or foreign governmental or regulatory authority, body or agency, acting in any capacity whatsoever, including but not limited to its corporate capacity or its capacity as insurer, regulator, conservator, receiver, trustee, liquidator, rehabilitator or similar position, or any assignee or successor of any such authority, body or agency.

All other terms and conditions remain unchanged.

MML 1238 01 16                                                                                                      Page 1 of 1



**MANAGEMENT LIABILITY**

# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND OTHER INSURANCE

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

**SECTION XI – OTHER INSURANCE** is replaced by the following:

**A.** With respect to all coverage parts except the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART, if any **Loss** resulting from any **Claim** is insured by any other valid and collectible policy issued to any **Insured**, then this policy shall apply only in excess of the amount of any deductibles, retentions, co-insurance and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

**B.** With respect to the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART, if any **Loss** resulting from any **Claim** is insured by any other valid and collectible policy issued to any **Insured**, then this policy shall be primary, unless such other policy is expressly written to be excess over other applicable insurance.

**C.** With regard to coverage for any leased employees or independent contractors who are included in the definition of **Employee**, this policy shall be specifically excess of any indemnification or insurance otherwise available to such leased employees or independent contractors from the applicable leasing company or any other source.

All other terms and conditions remain the same.



**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND NOTICE OF CLAIMS

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

### SCHEDULE

**Title of Executive Officer(s):**    CEO, CFO, RM, GC

Subparagraph **1.** in Paragraph **A. Notice of Claims** of **SECTION V – REPORTING AND NOTICE** is replaced by the following:

1.  As a condition precedent to their rights under such Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after any **Executive Officer** identified in the Schedule above first learns of such **Claim**, but in no event later than:

    **(a)**  Ninety (90) days after expiration of the **Policy Period**; or

    **(b)**  The expiration of the **Extended Reporting Period**, if exercised.

All other terms and conditions remain the same.

MML 1265 06 12                                                                                    Page 1 of 1



**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DATABREACH<sup>SM</sup> COVERAGE PARTS ENDORSEMENT

This endorsement adds to the insurance provided under the following:

☒ GENERAL TERMS AND CONDITIONS
☒ DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART
☐ DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
☒ EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

| SCHEDULE | | | | |
|---|---|---|---|---|
| Coverage Part | Coverage Part Limit of Liability | Coverage Part Retention | Coverage Part Retroactive Date | Coverage Part Duty to Defend |
| **A. Data Breach and Privacy Liability – Claims Made Coverage** | $ 25,000 Each **Claim** | $ 0 Each **Claim** | 08/29/2017 | Yes ☒ |
| **B. Data Breach Loss to Insured – Occurrence Coverage** | $ 25,000 Each **Unauthorized Access** | $ 0 Each **Unauthorized Access** | NONE | |
| **C. Breach Mitigation Expense – Occurrence Coverage** | $ 25,000 Each **Unintentional Data Compromise** | $ 0 Each **Unintentional Data Compromise** | NONE | |
| **D. All Coverage Parts of this Endorsement** | $ 25,000 Aggregate | | | |

In consideration of the premium paid, it is understood and agreed that the Coverages afforded by this endorsement are subject to the terms, conditions and limitations of this policy other than GENERAL TERMS AND CONDITIONS, SECTION XVIII – EXCLUSIONS A., except to the extent that such terms, conditions and limitations are modified herein. Solely with respect to the Coverages afforded by this endorsement, the policy is amended as follows:

**Claims Made Coverage:**  With regard to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the coverage afforded by this endorsement is limited to liability for only those **Claims** that are first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased, and reported to the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE A., Notice of Claims.

**Notice:**  DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, of this endorsement contains provisions that reduce the Limits of Liability stated in the endorsement by the costs of legal defense.

The Limits of Liability applicable to the Coverage Parts provided under this endorsement are in addition to, and do not erode the Limits of Liability provided under the DIRECTORS AND OFFICERS LIABILITY COVERAGE PART or the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART afforded in the policy to which this endorsement attaches.

Please read this endorsement carefully.

1.  The following is added to the INSURING AGREEMENTS Section of the Coverage Part indicated above:

**DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part – Claims Made Coverage:**

The Insurer shall pay on behalf of the **Company** or **Organization**, all sums which the **Company** or **Organization** shall become legally obligated to pay as **Damages** which are a result of a **Claim** first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased, and reported to the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE A., Notice of Claims, by reason of an **Unauthorized Access** or a **Potential Unauthorized Access**, provided:

1.  The entirety of the **Unauthorized Access** or the discovery of the **Potential Unauthorized Access** happens during the **Policy Period** or on or after the Retroactive Date stated in the Schedule of this endorsement as applicable to COVERAGE A. - Data Breach and Privacy Liability and before the end of the **Policy Period**; and

2.  Prior to the effective date of this policy the **Company** or **Organization** or any past or current principal, partner, officer, director, trustee, shareholder, **Employee**, manager or member of the **Company** or **Organization** had no knowledge of such **Unauthorized Access**, **Potential Unauthorized Access** or any computer security incident, intrusion, breach, compromise, theft, loss or use of the **Company's** or **Organization's Electronic Communications System** which may have led a reasonable person in such party's position to conclude that a **Claim** was likely.

**DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part – Occurrence Coverage:**

The Insurer shall indemnify the **Company** or **Organization** for the amount of **Loss** which results directly from an **Unauthorized Access** which occurs during the **Policy Period** and is reported to the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE D., Loss Reporting Provision:

1.  Provided prior to the effective date of this policy the **Company** or **Organization** or any past or current principal, partner, officer, director, trustee, shareholder, **Employee**, manager or member of the **Company** or **Organization** had no knowledge that such **Unauthorized Access** had occurred in whole or in part, and if such party knew prior to the **Policy Period** that the **Unauthorized Access** had occurred, then any continuation, change or resumption of such **Unauthorized Access** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**; and

2.  **Unauthorized Access**, which occurs during the **Policy Period** and was not, prior to the **Policy Period** known to have occurred by the **Company** or **Organization** or any past or current principal, partner, officer, director, trustee, shareholder, **Employee**, manager or member of the **Company** or **Organization**, includes any continuation, change or resumption of that **Unauthorized Access** after the end of the **Policy Period**; and

3.  **Unauthorized Access** will be deemed to have been known to have occurred at the earliest of the **Company** or **Organization** or any past or current principal, partner, officer, director, trustee, shareholder, **Employee**, manager or member of the **Company** or **Organization**:

    (a)  Reporting all, or any part, of the **Unauthorized Access** to the Insurer, any other insurer or any insurance representative;

    (b)  Incurring **Loss** or **Breach Mitigation Expense** because of the **Unauthorized Access**; or

    (c)  Becoming aware by any other means that **Unauthorized Access** has occurred or has begun to occur.

**DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part – Occurrence Coverage:**  The Insurer shall, subject to the prior written consent of the Insurer, reimburse the **Company** or **Organization** for the reasonable cost actually incurred by the **Company** or **Organization** for **Breach Mitigation Expense** which results directly from an **Unintentional Data Compromise** which occurs during the **Policy Period** and is reported to the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE E., Breach Mitigation Expense Reporting Provision, provided:

1.  The entirety of the **Unintentional Data Compromise** occurs during the **Policy Period**; and

**2.** Prior to the effective date of this policy the **Company** or **Organization** or any past or current principal, partner, officer, director, trustee, shareholder, **Employee**, manager or member of the **Company** or **Organization** had no knowledge such **Unintentional Data Compromise** of:

    **(a)** The **Company's** or **Organization's Electronic Communications System** ; or

    **(b)** The **Electronic Communications System** of a third party responsible for storing and securing the data of the **Company** or **Organization**;

Had occurred in whole or in part, which may have led a reasonable person in such party's position to conclude that incurring such expenses was likely, and if any such party knew prior to the **Policy Period** that such **Unintentional Data Compromise** had occurred, then any continuation, change or resumption of such **Unintentional Data Compromise** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**; and

**3.** **Unintentional Data Compromise** will be deemed to have been known to have occurred at the earliest of any **Insured**:

    **(a)** Reporting all, or any part, of an **Unauthorized Access** or **Potential Unauthorized Access** to the Insurer, any other insurer or any insurance representative;

    **(b)** Incurring **Loss** or **Breach Mitigation Expense** because of an **Unauthorized Access** or **Potential Unauthorized Access**; or

    **(c)** Becoming aware by any other means that an **Unintentional Data Compromise** has occurred or has begun to occur.

The **Company** or **Organization** must submit to the Insurer satisfactory written proof of payment of such costs within one (1) year after the expiration or cancellation of this policy.

If such expenses as are reimbursable under this DataBreach℠ COVERAGE C. - Breach Mitigation Expense Coverage Part become part of a judgment, award or settlement, such expenses shall not be subject to coverage under DataBreach℠ COVERAGE C. - Breach Mitigation Expense Coverage Part.

**2.** Solely with respect to the Coverages afforded by this endorsement, the following are added to the DEFINITIONS Section:

**A.** **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these; provided, however, **Bodily Injury** does not include humiliation or the infliction of emotional distress arising solely from an **Unauthorized Access** or **Potential Unauthorized Access**.

**B.** **Breach Mitigation Expense** means expenses incurred by the **Company** or **Organization** with the prior written consent of the Insurer for:

    **1.** The services of a public relations professional, or other publicity expenses that are recommended by a public relations professional to respond to any actual adverse publicity in the media, that is the result of an **Unauthorized Access** or **Potential Unauthorized Access**;

    **2.** Expenses, including but not limited to notification and related legal fees, that are incurred to comply with a **Security Breach Notice Law** and that are the result of an **Unauthorized Access** or **Potential Unauthorized Access**; and

    **3.** Expenses associated with voluntarily providing credit monitoring services to individuals affected by an **Unauthorized Access** or **Potential Unauthorized Access**.

**C.** **Claim** means the **Insured's** receipt of:

    **1.** A written demand for **Damages**; or

    **2.** The service of suit or institution of arbitration proceedings against the **Insured**;

All as a result of an **Unauthorized Access** or **Potential Unauthorized Access**.

**D.** **Claim Expenses** means reasonable and necessary amounts incurred by the Insurer, or by the **Insured** with the prior written consent of the Insurer, in the defense of that portion of any **Claim** for which coverage is afforded under this endorsement, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Insurer to apply for or furnish any such bonds, and costs of appeals; provided, however, that **Claim Expenses** shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with **Employees** or officials of the **Company** or **Organization** or employees or officials

of the Insurer; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the **Company** or **Organization** or the Insurer.

**E.    Damages** means the monetary portion of any judgment, award or settlement, including punitive damages where insurable; provided, however, **Damages** shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) the cost of any modifications or changes to the **Company's** or **Organization's** security measures, procedures, software or hardware required or agreed to by the **Insured** to satisfy a judgment, award or settlement; (3) any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment; (4) taxes, criminal or civil fines, or attorneys' fees of a party other than an **Insured** or other penalties imposed by law; (5) sanctions; (6) matters which are uninsurable under the law pursuant to which this endorsement shall be construed; or (7) the return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the **Insured**.

**F.    Employee** means any natural person while in the regular service of the **Company** or **Organization** in the ordinary course of the **Company's** or **Organization's** business and whom the **Company** or **Organization** compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. **Employee** includes a **Leased Worker** but does not include any **Temporary Worker** or independent contractor.

**G.    Forensic Expense** means reasonable and necessary costs incurred by the **Company** or **Organization** to engage the services of a third party computer security expert to determine the existence and cause of any **Unauthorized Access**.

**H.    Insured** means the **Company** or **Organization** and **Insured Persons**.

**I.    Insured Person**, whether in the singular or plural, means:

  **1.**   Any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, manager, officer, advisory director, or member of a duly constituted committee or board of the **Company** or **Organization** or their functional equivalent; and

  **2.**   Any natural person not described in subsection **1.** above who was, now is or shall during the **Policy Period** become an **Employee** of the **Company** or **Organization**.

**J.    Interrelated Unauthorized Accesses** means **Unauthorized Access(es)** and/or **Potential Unauthorized Access(es)** which are logically or causally connected by reason of any common fact, incident, circumstance, situation, or any computer security incident, intrusion, breach, compromise, theft, loss or use of the **Company's** or **Organization's Electronic Communications System**.

**K.    Leased Worker** means any natural person leased to the **Company** or **Organization** by a labor leasing organization, under an agreement between the **Company** or **Organization** and the labor leasing organization, to perform duties related to the conduct of the **Company's** or **Organization's** business and which are at the **Insured's** direction. **Leased Worker** does not include a **Temporary Worker**.

**L.    Loss** means:

  **1.**   Reasonable and necessary costs incurred by the **Company** or **Organization** to restore with due diligence and dispatch the **Company's** or **Organization's Electronic Communications System** to the condition that existed prior to an **Unauthorized Access**, including reconstruction of programs, electronic data and media which form a part of the **Company's** or **Organization's Electronic Communications System**; and

  **2.**   **Forensic Expense**;

  Provided, however, **Loss** shall not include: (a) any cost or charges associated with building, modifying or upgrading the **Company's** or **Organization's Electronic Communications System**, or any software, security measures or procedures; (b) any cost required to repair, build or modify tangible property to comply with any award or order by a court, arbitration or any similar proceeding; (c) any loss of reputation of the **Company** or **Organization** or loss of customer confidence in the **Company** or **Organization** or the value imputed to such loss; (d) expenses incurred by the **Company** or **Organization** in establishing the amount of any **Loss** covered under this endorsement; or (e) loss of business income.

**M.    Property Damage** means physical injury to tangible property, including all resulting loss of use of that property or loss of use of tangible property that is not physically injured; provided, however, damage to, corruption of or

inability to access data, software and computer networks shall not be considered to be loss of use of tangible property.

**N.** **Temporary Worker** means any natural person who is furnished to the **Company** or **Organization** to substitute for a permanent **Employee** on leave or to meet seasonal or short-term work load requirements.

**O.** **Unauthorized Access** means a breach of the **Company's** or **Organization's** security measures, systems, procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the **Company's** or **Organization's Electronic Communications System**, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the **Insured**. **Unauthorized Access** also includes:

   **1.** Access to the **Company's** or **Organization's Electronic Communications System** that is with the **Insured's** permission where such permission is the result of fraud or deception;

   **2.** Use of the **Company's** or **Organization's Electronic Communications System** by a party authorized by the **Insured** to use such system, who does so for an unauthorized purpose;

   **3.** The introduction of programs into the **Company's** or **Organization's Electronic Communications System** which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party;

   **4.** A credible threat or an extortion demand received by the **Company** or **Organization** threatening or portending loss, injury or damage to:

     **(a)** The **Company's** or **Organization's Electronic Communications System**, including programs, electronic data and media which form a part of the **Company's** or **Organization's Electronic Communications System**; or

     **(b)** Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the **Company's** or **Organization's Electronic Communications System**;

     For the purpose of extorting money or other valuable consideration from the **Company** or **Organization**;

   **5.** Failure to prevent a denial of service attack on the **Company's** or **Organization's Electronic Communications System** or to prevent the use of the **Company's** or **Organization's Electronic Communications System** by an unauthorized user or code to launch a denial of service attack on a third party;

   **6.** Solely with regard to:

     **(a)** DataBreach[SM] COVERAGE A. - Data Breach and Privacy Liability Coverage Part; and

     **(b)** DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part;

     The theft or loss of any paper records; and

   **7.** Solely with regard to DataBreach[SM] COVERAGE C. - Breach Mitigation Expense Coverage Part:

     The failure of any third party to prevent the unauthorized viewing, copying or distribution of **Private Data** which the **Company** or **Organization** has entrusted to such party under a written contract or agreement that specifically requires such party to protect the confidentiality of the **Private Data** so entrusted.

**3.** The following is added to the EXCLUSIONS Section:

**A.** With respect to all Coverages afforded by this endorsement, the Insurer shall not be obligated to defend any **Claim** made against any **Insured** and shall not be liable to pay any **Claim Expenses**, **Damages**, **Loss** or **Breach Mitigation Expense** which results from any **Claim**, **Unauthorized Access**, or **Unintentional Data Compromise**:

   **1.** Caused by access to the **Company's** or **Organization's Electronic Communications System** by any government, governmental agency or subagency, or any agents thereof while acting on behalf of such entity;

   **2.** Due to riot, civil commotion, war, insurrection or usurped power;

   **3.** Based upon or arising out of **Bodily Injury** or **Property Damage**;

4.  Based upon or arising out of liability of others assumed by the **Insured** under any contract or agreement; provided, however, this exclusion shall not apply to liability an **Insured** would have in the absence of such contract or agreement;

5.  Based upon, arising out of, or any way involving any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

6.  Based upon, arising out of, or in any way involving conduct of the **Insured** or at the **Insured's** direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to: (a) the strictly vicarious liability of any **Insured** for the intentional, willful, dishonest or fraudulent conduct of another **Insured** or for the conduct of another **Insured** that constitutes a willful violation of any statute or regulation; or (b) **Claim Expenses** incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation;

7.  Based upon, arising out of, or in any way involving any:

    **(a)** Actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of **Pollutants**; or

    **(b)** Direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or to pay for or contribute to the costs of undertaking such actions;

8.  Brought by or on behalf of any **Employee**, former **Employee** or prospective **Employee** based upon, arising out of, or in any way involving the employment relationship or the nature, terms or conditions of employment or any workplace tort; provided, however, this exclusion shall not apply to any **Claim** arising out of **Unauthorized Access** or **Potential Unauthorized Access**;

9.  Brought by, in the name of, or on behalf of any past or current principal, partner, officer, director, trustee, securityholder, **Employee**, **Volunteer**, manager or member of the **Company** or **Organization**; provided, however, this exclusion shall not apply:

    **(a)** To any **Claim** arising out of **Unauthorized Access** or **Potential Unauthorized Access** to the personal information of any past or current principal, partner, officer, director, trustee, securityholder, **Employee**, **Volunteer**, manager or member of the **Company** or **Organization** which is in the care, custody or control of the **Company** or **Organization**; or

    **(b)** To any **Claim** based upon, arising out of, or in any way involving an **Unauthorized Access** or **Potential Unauthorized Access** brought derivatively by one or more securityholders of the **Company** in their capacity as such;

10. Based upon, arising out of, or in any way involving the insolvency, receivership, bankruptcy, liquidation of the **Company** or **Organization** or of any subsidiary thereof whether or not included in the definition of **Insured**;

11. Based upon or arising out of any warranties or guarantees, express, implied or otherwise, or any cost estimates;

12. Based upon or arising out of any conversion, misappropriation, commingling of or defalcation of funds or property;

13. Based upon or arising out of any inability or failure of any party to pay or collect monies; or

14. Based upon, arising out of or in any way involving any actual or alleged infringement or inducement of infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade secrets or confidential and proprietary information acquired by the **Company** or **Organization**.

**B.** With respect to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part if an EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART is purchased and attached to this policy, this endorsement does not apply to any **Claim**:

1.  Made by any person or organization which is operated, managed or owned, in whole or in part, by the **Company** or **Organization** or any parent company, organization, subsidiary, division or affiliated company or organization thereof.

**C.** With respect to DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part, this endorsement does not apply to any **Loss**:

1. Caused by theft, physical damage or destruction of the **Company's** or **Organization's Electronic Communications System** or any part thereof; provided, however, this exclusion shall not apply to destruction of programs, electronic data and media caused by an **Unauthorized Access**;

2. Based upon or arising out of theft, or alleged theft, of money, securities, bonds, or similar financial instruments with monetary value caused or contributed to by any fraudulent, dishonest or criminal act committed by any person who is a past or current principal, partner, officer, director, trustee, securityholder, **Employee**, **Volunteer Worker**, manager or member of the **Company** or **Organization** at the time of the **Unauthorized Access**, whether acting alone or in collusion with others; or

3. Reflecting or purportedly reflecting the value of trade secrets, confidential processing methods or other confidential or proprietary information.

**4.** Solely with respect to the Coverages afforded by this endorsement, GENERAL TERMS AND CONDITIONS, SECTION III - LIMITS OF LIABILITY, RETENTION, COINSURANCE AND SINGLE CLAIMS is amended by the addition of the following:

**F. LIMITS OF LIABILITY FOR DataBreach<sup>SM</sup> COVERAGES**

1. **Limit of Liability - DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part - Each Claim:** The liability of the Insurer under DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part for the combined total of **Damages** and **Claim Expenses** for each **Claim** first made against the **Insured** during the **Policy Period** or **Extended Reporting Period**, if exercised, and reported to the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE A., Notice of Claims, shall not exceed the amount stated in the Schedule of this endorsement as applicable to Each **Claim**.

2. **Limit of Liability - DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part - Each Unauthorized Access:** The liability of the Insurer under DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part for all **Loss** resulting directly from each **Unauthorized Access** which occurs during the **Policy Period** and is reported to the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE D., Loss Reporting Provision, shall not exceed the amount stated in the Schedule of this endorsement as applicable to Each **Unauthorized Access**.

3. **Limit of Liability – DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part - Each Unintentional Data Compromise:** The liability of the Insurer under DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part for **Breach Mitigation Expense** for any **Unintentional Data Compromise** which occurs during the **Policy Period** and is reported to the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE E., Breach Mitigation Expense Reporting Provision, shall not exceed the amount stated in the Schedule of this endorsement as applicable to Each **Unintentional Data Compromise**.

4. **Limit of Liability - Aggregate:** Subject to the above Limits of Liability 1., 2. and 3., the combined total liability of the Insurer for all coverage afforded by all Coverage Parts of this endorsement shall not exceed the amount stated in the Schedule of this endorsement as Aggregate.

5. **Multiple Insureds, Claims, Losses and Claimants:** The inclusion herein of more than one **Insured** in any **Claim** or the making of **Claims** by, or reporting of **Loss** or **Breach Mitigation Expense** incurred by, more than one person or organization shall not operate to increase the Limits of Liability stated in this endorsement.

   a. With regard to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, more than one **Claim** arising out of a single **Unauthorized Access** or **Interrelated Unauthorized Accesses** shall be treated as a single **Claim**. Such single **Claim** shall be deemed first made on the date on which the earliest **Claim** arising out of such **Unauthorized Access** or **Interrelated Unauthorized Accesses** is made or with regard to notice given to and accepted by the Insurer pursuant to GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE F. Discovery of Potential Claims, on the date within the **Policy Period** on which such notice of potential **Claim** is first received by the Insurer.

   b. With regard to DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part, more than one **Loss** arising out of a single **Unauthorized Access** shall be considered a single **Unauthorized Access**.

   c. With regard to DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part, all **Breach Mitigation Expenses** arising out of a single **Unintentional Data Compromise** or a series of related **Unintentional Data Compromises**, shall be treated as a single **Unintentional Data Compromise**.

**G. RETENTION**

The Insurer's liability with respect to **Damages** for each **Claim**, **Loss** for each **Unauthorized Access** and **Breach Mitigation Expense** for each **Unintentional Data Compromise** shall apply only to that amount which is excess of the applicable Retention stated in the Schedule of this endorsement, and such Retention shall be borne by the **Insured** uninsured and at the **Insured's** own risk.

5. Solely with respect to the Coverages afforded by this endorsement, GENERAL TERMS AND CONDITIONS, SECTION IV – DEFENSE, SETTLEMENT AND COOPERATION is amended by the addition of the following:

**C. DEFENSE AND SETTLEMENT OF DataBreach<sup>SM</sup> COVERAGES**

1. **Defense and Investigation of Claims:** With regard to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Insurer shall have the right and duty to defend any **Claim** covered hereunder and to investigate any **Claim** to which coverage afforded by this endorsement under DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part applies pursuant to the following provisions:

   a. **Claim Expenses** incurred in defending and investigating such **Claim** shall be a part of and shall not be in addition to the applicable Limits of Liability stated in this endorsement. Such **Claim Expenses** shall reduce the applicable Limits of Liability. The Insurer shall have no obligation to pay any **Damages** or to defend or continue to defend any **Claim** or to pay **Claim Expenses** after the applicable Limits of Liability have been exhausted by payment(s) of **Damages** and/or **Claim Expenses**.

   b. The Insurer shall select defense counsel; provided, however, that if the law of the state of the **Company's** or **Organization's** domicile, stated in the Declarations, allows the **Insured** to control the selection of defense counsel where a conflict of interest has arisen between the **Insured** and the Insurer, the Insurer will provide a list of attorneys or law firms from which the **Insured** may designate defense counsel who shall act solely in the interest of the **Insured**, and the **Insured** shall direct such defense counsel to cooperate with the Insurer. Such cooperation shall include:

      (1) Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed **Damages**, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the **Claim**;

      (2) Providing any other reasonable information requested;

      (3) Providing fully itemized billing on a periodic basis; and

      (4) Cooperating with the Insurer and the **Insured** in resolving any discrepancies;

      And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Insurer, as set forth above, shall be included in **Claim Expenses**. Such **Claim Expenses** shall be a part of and shall not be in addition to the applicable Limits of Liability stated in this endorsement. Such **Claim Expenses** shall reduce the applicable Limits of Liability.

   c. The determination of the Insurer as to the reasonableness of the **Claim Expenses** shall be conclusive on the **Company** or **Organization**.

2. **Claim Settlement:** The Insurer may, at its sole discretion, investigate, negotiate and settle any **Claim**. The **Company** or **Organization** will abide by the terms of such settlement. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Claim Expenses** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with respect to any **Claim**, without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for or as a result of any offer to settle, settlement, **Claim Expenses**, assumed obligation, admission or stipulated judgment to which it has not given its prior written consent. The **Insured** shall not, with respect to any **Claim** covered under this endorsement, except at his/her own cost, make any payment, admit any liability, settle any **Claim**, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur **Claim Expenses** without the Insurer's prior written consent, such consent not to be unreasonably withheld. Any costs and expenses incurred by the **Insured** prior to the **Insured** giving written notice of the **Claim** to the Insurer shall be borne by the **Insured**.

3. **Loss or Breach Mitigation Expense Payment:** The Insurer may, at its sole discretion, investigate any **Loss**, any **Breach Mitigation Expense**, any **Unintentional Data Compromise** and any **Unauthorized Access** or **Potential Unauthorized Access**. The Insurer will indemnify the **Company** or **Organization** within sixty (60) days after it receives the sworn proof of **Loss** under DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to

Insured Coverage Part or satisfactory written proof of payment of **Breach Mitigation Expenses** under DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part, provided: (1) the **Insured** has complied with all the terms of this endorsement; and (2) the Insurer and the **Company** or **Organization** have agreed with the items included within and the amounts documented in the **Company's** or **Organization's** sworn proof of **Loss** and satisfactory written proof of payment of **Breach Mitigation Expenses**.

**D. COOPERATION**

With respect to the Coverages afforded by this endorsement, the **Insureds** agree to provide the Insurer with all information, assistance, and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery. Without limiting the foregoing and upon the Insurer's request, the **Insured** shall: (1) attend hearings, depositions, arbitrations, mediations and trials; and (2) assist in effecting settlement, and securing and giving evidence.

6.  Solely with respect to the Coverages afforded by this endorsement, GENERAL TERMS AND CONDITIONS, SECTION V – REPORTING AND NOTICE is amended by the addition of the following:

**D. Loss Reporting Provision:** It is a condition precedent to coverage afforded by this endorsement under DataBreach<sup>SM</sup> COVERAGE B. - Data Breach Loss to Insured Coverage Part that the **Company** or **Organization** shall give to the Insurer written notice as stated in the Notices item of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the **Policy Period** of any **Loss** which results directly from an **Unauthorized Access** which occurs during the **Policy Period**.

In the event of any **Loss**, the **Insured** must:

1.  Notify law enforcement in the event of a theft;

2.  Give the Insurer prompt notice of the **Unauthorized Access**;

3.  As soon as practicable, provide a description of how, when and what elements of the **Company's** or **Organization's Electronic Communications System** were impacted by the **Unauthorized Access**;

4.  Take all reasonable steps to protect the **Company's** or **Organization's Electronic Communications System** from further **Unauthorized Access** and to reduce **Loss**;

5.  As often as may be reasonably required, permit the Insurer to inspect the **Company's** or **Organization's Electronic Communications System** and examine the **Insured's** books and records related to the **Loss** incurred; and

6.  Provide, within sixty (60) days of the Insurer's request, a sworn proof of **Loss**, signed by the **Company** or **Organization**, containing the information the Insurer requests to investigate the **Loss**.

**E. Breach Mitigation Expense Reporting Provision:** It is a condition precedent to coverage afforded by this endorsement under DataBreach<sup>SM</sup> COVERAGE C. - Breach Mitigation Expense Coverage Part that the **Company** or **Organization** shall give to the Insurer written notice as stated in the Notices item of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the **Policy Period** of any **Unintentional Data Compromise**, **Unauthorized Access** or **Potential Unauthorized Access** which occurs during the **Policy Period**.

The **Company** or **Organization** must:

1.  Submit to the Insurer satisfactory written proof of payment of such **Breach Mitigation Expenses** within one (1) year after the expiration or cancellation of this policy;

2.  As soon as practicable, provide a description of how, when and what elements, if any, of the **Company's** or **Organization's** or a third party's **Electronic Communications System** were impacted by the **Unintentional Data Compromise**, **Unauthorized Access** or **Potential Unauthorized Access**;

3.  Take all reasonable steps to protect the **Company's** or **Organization's Electronic Communications System** from further **Unauthorized Access**, if applicable; and

4.  As often as may be reasonably required, permit the Insurer to inspect the **Company's** or **Organization's Electronic Communications System** and examine the **Insured's** books and records related to the **Breach Mitigation Expense** incurred.

**F. Discovery of Potential Claims:** Under DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, if during the **Policy Period**, the **Insured** first becomes aware of a specific **Unauthorized Access** or

specific **Potential Unauthorized Access** which is reasonably expected to result in a **Claim** within the scope of coverage of this DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, then the **Insured** may provide written notice as stated in the Notices item of the Declarations to the Insurer containing the information listed below. If such written notice is received by the Insurer during the **Policy Period**, then any **Claim** subsequently made against the **Insured** arising out of such **Unauthorized Access** or **Potential Unauthorized Access** shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Insurer.

It is a condition precedent to the coverage afforded by this Discovery of Potential Claims provision that written notice be given to the Insurer containing the following information:

1.  The description of the specific **Unauthorized Access** or **Potential Unauthorized Access**;

2.  The date on which such **Unauthorized Access** or **Potential Unauthorized Access** took place;

3.  The injury or damage which has or may result from such **Unauthorized Access** or **Potential Unauthorized Access**;

4.  The identity of any injured persons and/or organization subject to such injury or damage; and

5.  The circumstances by which the **Insured** first became aware of such **Unauthorized Access** or **Potential Unauthorized Access**.

Subject to the paragraph hereinabove, if during the **Policy Period** the **Insured** provides such written notice of a specific **Unauthorized Access** or **Potential Unauthorized Access** which is reasonably expected to result in a **Claim** within the scope of coverage of this DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the Insurer at its sole option, may investigate such specific **Unauthorized Access** or **Potential Unauthorized Access**. Such matter shall be subject to all terms, conditions and provisions in this endorsement as applicable to a **Claim**.

7.  GENERAL TERMS AND CONDITIONS, SECTION VI – COVERAGE EXTENSIONS C., Extended Reporting Period, is deleted and replaced with the following:

    **C. EXTENDED REPORTING PERIOD**

    1.  With regard to DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, the **Company's** or **Organization's** right to exercise the **Extended Reporting Period** under this endorsement shall exist solely if the **Company** or **Organization** also exercises its right to purchase the **Extended Reporting Period** under all Insuring Agreements in the policy for which an **Extended Reporting Period** is available.

    2.  If the Insurer or the **Parent Company** or **Parent Organization** cancels or nonrenews this policy other than for nonpayment of premium, the **Parent Company** or **Parent Organization** shall have the right, upon payment of the applicable additional premium stated in Item 3.A of the Declarations, to an extension of the coverage granted by this policy for the respective period stated in Item 3.B of the Declarations immediately following the effective date of such cancellation or nonrenewal, but such extension of coverage shall only apply to **Claims** first made against the **Insureds** during such period for any:

        a.  **Wrongful Act** as covered under the DIRECTORS AND OFFICERS LIABILITY COVERAGE PART, the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART, and/or the FIDUCIARY LIABILITY COVERAGE PART, if such Coverage Part is purchased and attached to this policy, which happened prior to the effective date of such cancellation or nonrenewal;

        b.  **Unauthorized Access** or **Potential Unauthorized Access** the entirety of which happened during the **Policy Period** or on or after the Retroactive Date stated in Section Insuring Agreement, DataBreach<sup>SM</sup> COVERAGE A. - Data Breach and Privacy Liability Coverage Part, Item 1., and prior to the effective date of such cancellation or nonrenewal;

        And which is otherwise covered by the applicable Coverage Part of this policy.

        This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Parent Company** or **Parent Organization** to the Insurer within thirty (30) days following the effective date of cancellation or nonrenewal. If such written request and payment of additional premium are not received by the Insurer within such thirty (30) days, there shall be no right to purchase the **Extended Reporting Period** at a later date.

The quotation of a different premium, Retention, Coinsurance, Limit of Liability or other coverage terms at renewal does not constitute a cancellation or nonrenewal for the purpose of this Section VI.C. The entire additional premium for the **Extended Reporting Period** shall be deemed fully earned at the inception of the **Extended Reporting Period**.

The **Extended Reporting Period** shall not in any way increase the Limits of Liability stated in Items 5. and 7. of the Declarations.

**8.** Solely with respect to the Coverages afforded by this endorsement, GENERAL TERMS AND CONDITIONS, SECTION XI – OTHER INSURANCE is deleted and replaced with the following:

**OTHER INSURANCE**

If any **Loss** resulting from any **Claim** or any **Claim Expenses**, **Damages**, **Loss** or **Breach Mitigation Expense** subject to the Coverages afforded by this endorsement is insured by any other valid and collectible policy issued to any **Insured**, then this policy shall apply only in excess of the amount of any deductibles, retentions, co-insurance and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

With regard to coverage for any **Leased Worker** who is included in the definition of **Employee**, this policy shall be specifically excess of any indemnification or insurance otherwise available to such **Leased Worker** from the applicable leasing company or any other source.

**9.** Solely with respect to the Coverages afforded by this endorsement, GENERAL TERMS AND CONDITIONS, SECTION XV – TERRITORY AND VALUATION is deleted and replaced with the following:

**TERRITORY AND VALUATION**

The insurance afforded by this endorsement applies worldwide, provided the **Claim** is made or the **Loss** or **Breach Mitigation Expense** is incurred in the United States of America, its territories or possessions or Puerto Rico.

All premiums, limits, retentions, **Claim Expenses**, **Damages**, **Loss** or **Breach Mitigation Expense** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Claim Expenses**, **Damages**, **Loss** or **Breach Mitigation Expense** is due, respectively.

**10.** GENERAL TERMS AND CONDITIONS, SECTION XIX – MITIGATION is added as follows:

**MITIGATION**

It is a condition precedent to coverage that the **Insured** shall not willfully fail to comply with any **Security Breach Notice Law** that the **Company** or **Organization** may be subject to, by reason of an **Unauthorized Access** or **Potential Unauthorized Access**.

**11.** The following provisions of the GENERAL TERMS AND CONDITIONS shall also apply to the coverage afforded by this endorsement.

SECTION I – TERMS AND CONDITIONS
SECTION VIII – CHANGES IN EXPOSURE
SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES
SECTION X – CANCELLATION AND NONRENEWAL
SECTION XII – SUBROGATION
SECTION XIII – ALTERATION, ASSIGNMENT AND HEADINGS
SECTION XIV – PAYMENT PRIORITY
SECTION XVI – AUTHORIZATION CLAUSE
SECTION XVII – BANKRUPTCY

All other terms and conditions remain unchanged.

**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL ENTITIES INSURED INCLUDING SUBSIDIARIES

This endorsement modifies all insurance provided under the following for which a check mark (X) appears:

☒  GENERAL TERMS AND CONDITIONS
☒  DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
☐  DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
☒  EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
☒  FIDUCIARY LIABILITY COVERAGE PART

**SCHEDULE**

**Additional Entity(ies)**

**NexGenomics, LLC**

In consideration of the premium paid, it is hereby understood and agreed that solely with regard to the above marked Coverage Part(s), GENERAL TERMS AND CONDITIONS is amended as follows:

1.  The definition of **Company** or **Organization** is amended to include the entity(ies) listed in the Schedule above; and any entity that qualifies as a **Subsidiary** of any of the above listed Additional Entities according to the definition of **Subsidiary** are included as such.

All other terms and condition remain unchanged.

**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIOR ACTS EXCLUSION

This endorsement modifies all insurance provided under the following for which a check mark (X) appears:

☒  DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
☐  DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
☒  EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
☒  FIDUCIARY LIABILITY COVERAGE PART

The following exclusion is added to **the SECTION IV - EXCLUSIONS** of the Coverage Part(s) marked above:

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** based upon, arising out of, or in any way involving any actual or alleged **Wrongful Act** or **Interrelated Wrongful Acts** taking place prior to 8/29/2017.

For the purpose of this exclusion all actual or alleged **Interrelated Wrongful Acts** shall be deemed to have taken place on the date on which the earliest of such actual or alleged **Wrongful Acts** took place.

All other terms and conditions remain unchanged.

MML 1312 01 16



**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - MAJOR SHAREHOLDER

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART

**SCHEDULE**

Percentage of Ownership: 10%

The following exclusion is added to the **EXCLUSIONS** Section:

The Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** brought or maintained in any capacity by or on behalf of any individual, entity or **Group of Related Entities** which did or does directly own a percentage of the outstanding voting securities of a **Company** or **Organization** that is equal to or greater than the percentage shown in the Schedule above.

As respects this exclusion, **Group of Related Entities** means one or more entities which, directly or indirectly through any **Subsidiary** or otherwise, are under common beneficial or legal ownership or control whether through operation of law, contract or agreement, stock ownership or membership, beneficial interest, charter, articles of incorporation or by-law provisions.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART

The following amends the **EXCLUSIONS** of the Coverage Part(s) indicated above:
Exclusion **F.** of the Directors And Officers And Organization Liability Coverage Part or Directors And Officers And Company Liability Coverage Part and Exclusion **C.** of the Fiduciary Liability Coverage Part are replaced by the following:

**Bodily Injury And Property Damage Exclusion**

Based upon, arising out of, or in any way involving any actual or alleged bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible or intangible property including loss of use thereof.

All other terms and conditions remain the same.



**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - BROAD PROFESSIONAL LIABILITY

This endorsement modifies all insurance provided under the following for which a check mark ☒ appears:

☒ DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
☐ DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
☒ EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
☐ FIDUCIARY LIABILITY COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. With respect to the above marked Coverage Part(s), **SECTION - EXCLUSIONS** is amended by the addition of the following exclusion:

    The Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** based upon, arising out of, or in any way involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty in connection with the rendering or failure to render any professional services.

    This exclusion shall not apply to any **Insured Person** against whom a **Claim** is made alleging such **Insured Person** failed to supervise the rendering of or failure to render any professional services excluded above. However, the Insurer's liability for **Loss** for such covered **Claim** shall be limited to **Loss** arising from the failure to supervise the rendering of or failure to render professional services only.

2. **DIRECTORS AND OFFICERS LIABILITY COVERAGE PART SECTION - EXCLUSIONS L.4**. is deleted.

All other terms and conditions remain unchanged.



MANAGEMENT LIABILITY
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIFIC MATTER EXCLUSION

This endorsement modifies all insurance provided under the following for which a check mark (X) appears:

☒ DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
☒ EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
☒ FIDUCIARY LIABILITY COVERAGE PART

**SCHEDULE**

Specific Matter:

1. All open matters, including ones related to HRC Fertility but not limited to, Natalie Natelborg v. HRC Fertility matter occurred on 5/24/2017 with Western World claim no. 00131687

2. Norman Quan v. Lifovum Fertility Management matter reported on 3/23/2018 with  Markel claim no. ML402907; Jeannette Heckner v. Lifovum Fertility Management matter reported on 4/13/2018 with Markel claim no. ML402985

In consideration of the premium paid, it is hereby understood and agreed that the Insurer shall not be liable under the Coverage Part(s) for which a check mark (X) appears above to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured** based upon, arising from, or in consequence of any fact, circumstance or situation underlying or alleged in any **Specific Matter** or any substantially similar fact, circumstance or situation.

For purposes of this endorsement, **Specific Matter** means any matter shown in the Schedule above, and shall include any claimant(s) named above or associated in any manner with any matter shown in the Schedule above.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND SEVERABILITY - EXCLUSIONS

This endorsement modifies all insurance provided under the following but only if such Coverage Part is purchased and attached to this policy:

DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART

### SCHEDULE

| Coverage Part | Title of Executive Officer(s) |
|---|---|
| Directors and Officers and Company Liability | President, CEO, CFO |
| Employment Practices Liability | |
| Fiduciary Liability | |

It is understood and agreed that the EXCLUSIONS Section of the Coverage Part(s) indicated above are amended as follows:

**A.** The last sentence of SECTION IV – EXCLUSIONS of the DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART is replaced by the following:

For the purpose of determining the applicability of EXCLUSIONS I. and J. set forth in this SECTION IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under INSURING AGREEMENTS C. only the **Wrongful Act** or knowledge of an executive officer of a **Company** who is listed in the Schedule above for the DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART, shall be imputed to such **Company** and its **Subsidiaries**.

**B.** The last sentence of SECTION IV – EXCLUSIONS of the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION COVERAGE PART is replaced by the following:

For the purpose of determining the applicability of EXCLUSIONS F. and G. set forth in this SECTION IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an executive officer of a **Company** who is listed in the Schedule above for the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART, shall be imputed to such **Company** and its **Subsidiaries**.

**C.** The last sentence of SECTION IV – EXCLUSIONS of the FIDUCIARY LIABILITY COVERAGE PART is replaced by the following:

For the purpose of determining the applicability of EXCLUSIONS D. set forth in this SECTION IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an executive officer listed in the Schedule above for the FIDUCIARY LIABILITY COVERAGE PART: **(i)** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**; and **(ii)** of a **Plan** shall be imputed to such **Plan**.

All other terms and conditions remain unchanged.



**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONSUMER PROTECTION EXCLUSION

This endorsement modifies all insurance provided under the following for which a check mark (X) appears:

☒ DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
☐ DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
☒ EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
☒ FIDUCIARY LIABILITY COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that SECTION IV – EXCLUSIONS is amended by the addition of the following exclusion

The Insurer shall not be liable under any purchased Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

Based upon, arising out of, or in any way involving any **Wrongful Act** or **Interrelated Wrongful Acts** that violate(s) or is(are) alleged to violate any federal or state consumer protection statute, law, rule, ordinance or regulation including, but not limited to:

1. The Telephone Consumer Protection Act of 1991 (TCPA), any amendment thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

2. The CAN-SPAM Act of 2003, any amendment thereof or any similar or related federal or state statute, law, rule, ordinance or regulation;

3. Any federal, state or local statute, law, rule, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 and their amendments and additions, that addresses, prohibits, or limits the printing, interception, dissemination, disposal, collecting, recording, sending, transmitting, communicating, distribution or receiving of private material, private communications or private information.

All other terms and conditions remain unchanged.

MML 1365 01 16
Page 1 of 1



**MANAGEMENT LIABILITY**
POLICY NUMBER: MKLV5MML000039

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEXUAL MISCONDUCT EXCLUSION (Third Party)

It is agreed and understood that this endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

**SECTION II.DD. - DEFINITIONS**

**DD. Third Party Discrimination Claim** means a **Claim**, as defined in the applicable Coverage Part, other than an **Employment Practices Claim**, which is brought by or on behalf of any natural person who is a customer or client of the **Company** and who is not an **Insured Person** or an applicant for employment with the **Company**, for a **Wrongful Act** or a **Wrongful Internet Activity** either of which constitutes an actual or alleged violation of any law or public policy concerning discrimination or sexual harassment; provided this shall not include any such **Claim** based upon, arising out of or related to any actual, alleged or attempted contact or other similar conduct which constitutes molestation, assault, battery, abuse or lewdness.

Provided, however, there shall be no coverage for **Third Party Discrimination Claims** if the Third Party Discrimination Liability limits stated in item 5.B. of the Declarations are shown to be $0 or Not Purchased.

All other terms and conditions remain the same.

**Page 1 of 1**
