_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

_____

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

   Rolls Royce Paschal                            N/A
Deputy Clerk                                  Court Reporter

Attorneys Present for Plaintiff:              Attorneys Present for Defendants:

Not Present                                 Not Present

**PROCEEDINGS: ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [140]**

     In this case, Plaintiff Evanston Insurance Company ("Evanston") seeks a declaratory
judgment that it owes no duty to provide coverage to Defendants Jane L. Frederick, M.D., an
individual ("Frederick"); Jane L. Frederick, M.D., a Medical Corporation ("Frederick Corp.");
Daniel A. Potter, M.D., an individual ("Potter"); Daniel A. Potter, M.D., Inc., a Medical
Corporation ("Potter Corp."); John Wilcox, M.D., an individual ("Wilcox"); Bradford Kolb,
M.D., an individual ("Kolb") (collectively, the "Physician Defendants"); and HRC Fertility
Management, LLC ("HRC Fertility") (together with the Physician Defendants, "Defendants") in
connection with a Los Angeles Superior Court action titled *Sanaz Ghazal, M.D., et al. v.
Huntington Reproductive Center Medical Group, et al.*, Case No. 2OSTCV46587, which later
moved to private arbitration and settled (the "Ghazal Action" or "Ghazal Suit").  (Dkt. 25
("First Amended Complaint" or "FAC") ¶ 2.)  Defendants filed a Counterclaim against
Evanston, seeking declaratory relief that Evanston did have an obligation to provide coverage
for the Ghazal Action, and also asserting claims for breach of contract and breach of the
covenant of good faith and fair dealing.  (Dkt. 33 ("Counterclaim" or "CC").)

     Now before the court is Evanston's Motion for Summary Judgment, in which Evanston
seeks summary judgment on Evanston's remaining claims in the FAC and on the Counterclaim.
(Dkt. 140 ("Motion" or "Mot.").)  Defendants oppose the Motion.  (Dkt. 141 ("Opposition" or
"Opp.").)  Evanston filed a reply in support of the Motion.  (Dkt. 142 ("Reply").)  The parties'
positions regarding undisputed facts are set forth in the document titled Evanston Insurance

**CIVIL MINUTES – GENERAL**               **1**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                          Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

Company's Response to Defendants' Statement of Genuine Disputes and Additional Material
Facts.  (Dkt. 142-1 ("SUF").)  The court held a hearing on the Motion on June 11, 2025.
(Dkt. 145.)  Based on the state of the record, as applied to the applicable law, the Motion is
**GRANTED IN PART AND DENIED IN PART**.

I.      **Background**

        A.      **The Relevant Insurance Policy**

        Evanston issued to Lifovum Fertility Management, LLC, now known as HRC Fertility, a
"For Profit Management Liability Policy," No. MKLV5MML000039 (the "Policy"), for the
August 29, 2018, to August 29, 2019 Policy Period.  (Dkt. 110-1 ("Policy") at 9 of 73.)  The
Policy contains a Directors and Officers and Company Liability Coverage Part ("D&O
Coverage Part") and an Employment Practices and Third Party Discrimination Liability
Coverage Part ("EPL Coverage Part").  (*See id.* at 10.)  The D&O Coverage Part states:

>       The Insurer shall pay on behalf of the **Company** all **Loss** which the
>       **Company** becomes legally obligated to pay on account of any **Claim**
>       first made against the **Company** during the **Policy Period** or the
>       **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking
>       place before or during the **Policy Period**.

(*Id.* at 32.)  A Wrongful Act is defined as "[a]ny actual or alleged error, misstatement,
misleading statement, act, omission, neglect, or breach of duty by any **Insured Person** in their
capacity as such or in an **Outside Position**, or with respect to Insuring Agreement C, by the
**Company**."  (*Id.* at 36.)

The EPL Coverage Part states:

>       The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the
>       **Insureds** become legally obligated to pay on account of any
>       **Employment Practices Claim** first made against the **Insureds** during

**CIVIL MINUTES – GENERAL**                                    **2**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                                    Date: June 12, 2025

Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

_____

the **Policy Period** or during the **Extended Reporting Period**, if
purchased, for a **Wrongful Employment Practice** taking place before
or during the **Policy Period**.

(*Id.* at 40.)  The Policy's definition of a Wrongful Employment Practice includes
wrongful termination, discrimination in employment, employment related torts, and violation of
employment-related laws, rules, or regulations.  (*Id.* at 20.)

### B.    The Ghazal Claims

Dr. Sanaz Ghazal ("Dr. Ghazal") "made claims in March 2019."  (SUF ¶ 1.)  Specifically,
"[o]n March 14, 2019, Evanston received an Acord General Liability Notice of
Occurrence/Claim (the 'Acord') dated March 13, 2019, stating in part as follows: 'Sanaz
Ghazal, M.D. EPLI. Wrongful termination.'"[1]  (*Id.* ¶ 2.)  "The next day, Evanston
acknowledged receipt of the Acord, and generally reserved all rights under the Policy, at law,
and in equity."  (*Id.* ¶ 3.)  "Evanston sent the **Claim** to the Littler Mendelson law firm
('Littler'), which assumed the defense of HRC Fertility."  (*Id.* ¶ 5.)

On January 22, 2020, the law firm Callahan & Blaine ("C&B") sent Evanston a letter
advising that C&B was counsel for HRC Fertility in connection with the Ghazal Claim and
tendering the Claim to Evanston for defense and indemnification of the Insured under the
Policy.  (*Id.* ¶ 6.)  Like the Acord, C&B's letter identified only HRC Fertility as the "Insured"
and the only entity tendering the Ghazal Claim to Evanston, and did not indicate that a request
for coverage was being made by any other entity or individual.  (*Id.* ¶¶ 7-8.)  "C&B asserted
that it represented HRC Fertility, and no others."  (*Id.* ¶ 9.)

"On September 16, 2020, Evanston sent a coverage position letter to HRC Fertility
reserving its rights under the Policy, notifying of various coverage defenses and advising of

---

[1] The Acord further stated, "Answer to attached complaint is due 3/18/19."  (SUF ¶ 2.)
However, because the Ghazal Action was not actually filed until December 4, 2020, (*id.* ¶ 16),
Evanston states that "the 'complaint' reference in the Acord was inadvertent," (*id.* ¶ 4).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                                        Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

Littler's appointment as HRC Fertility's defense counsel." (*Id.* ¶ 11.) "On October 16, 2020, C&B asserted that Evanston's position created a conflict of interest requiring the appointment of independent *Cumis* counsel, being C&B." (*Id.* ¶ 12.)

### C.    The Ghazal Action and Settlement Discussions

On December 4, 2020, Dr. Ghazal and Sanaz Ghazal, M.D., Inc. (the "Ghazal Action Plaintiffs") filed the Ghazal Action against Huntington Reproductive Center Medical Group ("HRC Medical"), HRC Fertility, Jinxin Fertility Group Limited ("Jinxin"), Frederick, Frederick Corp., Potter, Potter Corp., Wilcox, Kolb, MDR Pharmacy, and unnamed Does. (*Id.* ¶ 16.) In the Ghazal Action, Dr. Ghazal alleged she was terminated from her employment with HRC Medical "in retaliation for objecting to defendants' practices which she believed were illegal," including multiple alleged kickback schemes. (*Id.* ¶ 23.) "The Ghazal Suit Complaint initially asserted eight Causes of Action, as follows: (1) Wrongful Termination against HRC Medical; (2) Whistle Blower Retaliation against HRC Medical; (3) Defamation against HRC Medical, Frederick, Frederick Corp., Potter and Potter Corp.; (4) Fraud against Potter; (5) Breach of Contract against HRC Medical; (6) Intentional Interference with Contract against Frederick, Potter and HRC Fertility; (7) Intentional Interference with Prospective Economic Advantage against HRC Medical, HRC Fertility, Frederick and Potter; and (8) Unfair Business Practices against all Defendants." (*Id.* ¶ 24.)

"In January 25, 2021 letter, Evanston reiterated its agreement to provide HRC Fertility with a defense in the Ghazal Suit under a full reservation of rights." (*Id.* ¶ 26.) Specifically, "[s]ince only two causes of action (Counts Six and Seven), each sounding in intentional conduct, were asserted against HRC Fertility, Evanston reserved rights to disclaim coverage under the Policy's 'intentional conduct' exclusions – i.e., under: (1) the [EPL] Coverage Part, Exclusion F, barring coverage for 'deliberately fraudulent or deliberately criminal act[s] or omission[s],' and Exclusion G, barring coverage for 'any profit, remuneration or financial advantage' to which an Insured was not legally entitled; and (2) under the [D&O] Coverage Part, Exclusion I, precluding coverage for fraudulent acts or omissions or willful violations of

**CIVIL MINUTES – GENERAL**                                                                    **4**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                              Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

statutes or regulations, and Exclusion J, barring coverage for profit, remuneration or financial
advantage to which an Insured is not legally entitled." (*Id.* ¶ 27.)

On April 16, 2021, the state court presiding over the Ghazal Action granted a motion to
compel arbitration as to claims one through seven, and stayed the eighth claim pending
resolution of arbitration. (*Id.* ¶ 25.)

"On June 7, 2023, the parties to the Ghazal Suit attended mediation, with HRC Medical
(which is undisputedly not Evanston's insured) and HRC Fertility the remaining defendants, as
the Physician Defendants were dismissed." (*Id.* ¶ 43.) "Mediation was unsuccessful." (*Id.*
¶ 46.)

On June 8, 2023, the Ghazal Action Plaintiffs "filed with the arbitrator an Emergency
Motion for Leave to Amend the Complaint to Add a Cause of Action for Negligent Interference
with Prospective Economic Advantage, solely against HRC Fertility (the 'Emergency
Motion')." (*Id.* ¶ 47.) "On June 12, 2023, the first day of the arbitration hearing in the Ghazal
Suit, the arbitrator granted the Emergency Motion, deeming the Draft Amended Complaint to
be the operative pleading." (*Id.* ¶ 50.)

"[O]n June 15, 2023, C&B emailed Evanston that Ghazal demanded $2.5 million to
settle." (*Id.* ¶ 51.) C&B counsel noted, "To be clear, and as we have requested in all settlement
discussions, any payment by Evanston would be contingent on Evanston wa[i]ving its right to
seek reimbursement of the settlement payment from HRC. Evanston would retain all rights to
pursue its coverage litigation against HRC with respect to the defense fees, but payment of
settlement funds would include a mutual release and waiver by HRC and Evanston as to the
indemnity issues." (Dkt. 140-2 (Declaration of Christina R. Salem, "Salem Decl."), Ex. 37.) At
6:23 p.m. on June 15, 2023, C&B counsel texted Evanston's coverage counsel that Dr. Ghazal's
counsel had "just advised a few minutes ago that their settlement demand expires at 9 AM
tomorrow," meaning the $2.5 million settlement demand would expire at 9:00 a.m. on June 16,
2023. (SUF ¶ 54.) Evanston's coverage counsel responded to C&B counsel by text message,
"As you probably know, a carrier is not obligated to respond to an unreasonably timed demand.
The carrier is likely willing to pay more money but not in a less than 24 hour period." (*Id.*

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

¶ 56.)  Coverage counsel also stated to C&B counsel by email, "We are reviewing your email contents and will respond accordingly."  (Salem Decl. Ex. 40.)

C&B counsel responded by email, "I do not agree that additional time is required for Evanston to make its decision on the merits of the [Ghazal Action Plaintiffs'] case.  I understand that you contend that additional time is need to consider coverage issues, but such coverage issues should not be considered when evaluating settlement demands by a Plaintiff.  Nevertheless, based on your contentions, I sent the following e-mail to [the Ghazal Action Plaintiffs'] counsel this morning requesting that 'the expiration of your settlement demand be extended to Monday, June 19, at 5:00PM, so that all relevant parties and decisionmakers may meaningfully consider the demand.'  Within minutes the request for an extension was rejected."  (Salem Decl. Ex. 41; *see id.* Ex. 43 (Dr. Ghazal's counsel responding, "As we promised, we will leave the offer open until 9 a.m. this morning.  Thereafter, it is withdrawn.").)

Evanston's coverage counsel responded to C&B counsel that "Evanston is continuing to consider the information and requests you reported on yesterday and that it is entitled to a reasonable amount of time to assess the settlement demand, which Evanston was only made aware of less than 24 hours ago."  (*Id.*)  Evanston's coverage counsel continued, "As you know, an amended pleading was just filed, containing entirely new allegations and claims against HRC Fertility.  Evanston is entitled a reasonable amount of time to review those claims and evaluate them against the new settlement demand.  Given these circumstances, an arbitrary and less-than 24-hour time period to respond to the demand is unreasonable as a matter of law.  Evanston continues to assess the demand made yesterday, against the new pleading, along with the information you provided this morning. We are planning to respond as soon as is reasonably possible. Evanston continues to reserve all rights accordingly and waives none."  (*Id.*)

## D.   The First Amended Complaint and Counterclaim

In this case, the parties dispute whether Evanston had a duty to provide coverage to Defendants under the Policy related to the Ghazal Action.  The First Amended Complaint seeks six judicial declarations, including declarations that Evanston had no duty to defend or pay any claim expenses on behalf of the Physician Defendants, and that coverage is barred and/or

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

vitiated under the Policy.  (FAC at 31, Prayer for Relief.)  In the Counterclaim, Defendants seek a judicial declaration that Evanston has an obligation to defend the Physician Defendants in the Ghazal Action, and also assert claims for breach of contract and tortious breach of the covenant of good faith and fair dealing (bad faith).  (CC ¶¶ 28-49.)

In late 2023, after the FAC and Counterclaim were filed, the Ghazal Action settled, and Dr. Ghazal formally dismissed the Ghazal Action on November 22, 2023.  (*See* Opp. at 5; Dkt. 80 at 17.)

## II.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material."  *Id.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving

**CIVIL MINUTES – GENERAL**                                    **7**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

party must go beyond the pleadings and by its own evidence 'set forth specific facts showing
that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th
Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must
show specific trial-worthy facts.").  "Where the record taken as a whole could not lead a
rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat.
Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  "In judging evidence at the
summary judgment stage, the court does not make credibility determinations or weigh
conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).
The court must draw all reasonable inferences in the non-moving party's favor.  *In re Oracle
Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence."  *Richards v.
Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
1987).  "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists"
does not preclude summary judgment.  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989).  "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is,
if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson*, 477 U.S. at 248 (internal quotation marks omitted).  "By its very terms, this standard
provides that the mere existence of some alleged factual dispute between the parties will not
defeat an otherwise properly supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact."  *Id.* at 247-48; *see also United States v. Fred A.
Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a
genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary
judgment process:

> The moving party initially bears the burden of proving the absence of
> a genuine issue of material fact.  Where the non-moving party bears
> the burden of proof at trial, the moving party need only prove that
> there is an absence of evidence to support the non-moving party's

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                              Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

case.  Where the moving party meets that burden, the burden then
shifts to the non-moving party to designate specific facts
demonstrating the existence of genuine issues for trial.  This burden is
not a light one.  The non-moving party must show more than the mere
existence of a scintilla of evidence.  The non-moving party must do
more than show there is some "metaphysical doubt" as to the material
facts at issue.  In fact, the non-moving party must come forth with
evidence from which a jury could reasonably render a verdict in the
non-moving party's favor.  In determining whether a jury could
reasonably render a verdict in the non-moving party's favor, all
justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

        "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against
a party who fails to make a showing sufficient to establish the existence of an element essential
to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v.
Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).  "Where no such showing is
made, the moving party is entitled to a judgment as a matter of law because the nonmoving
party has failed to make a sufficient showing on an essential element of her case with respect to
which she has the burden of proof." *Id.* (citation modified).

**III.    Discussion**

        Evanston seeks summary judgment based on (1) the Physician Defendants' failure to
comply with the Policy's reporting requirements; (2) the Physician Defendants' failure to
qualify as "**Insured Persons**," "**Insureds**," or as being sued in an **Insured** capacity;
(3) Defendants' breach of their cooperation duties under the Policy; (4) Evanston's good faith;
and (5) a right of allocation.  (Mot. at 16-25.)  The court addresses these arguments in turn.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

_____

A.    **The Policy's Reporting Requirements: Evanston's Second Claim and the Physician Defendants' Counterclaim**

Evanston's second claim seeks declaratory judgment that "[c]overage is barred under the Evanston Policy for the Physician Defendants with respect to the Ghazal Suit" because "[t]he Physician Defendants did not give to Evanston written notice of the Ghazal Suit as soon as practicable, or within ninety (90) days after expiration of the Evanston Policy, and as more specifically set forth in **SECTION V – REPORTING AND NOTICE, A. NOTICE OF CLAIMS** under the General Terms and Conditions of the Evanston Policy." (FAC ¶¶ 60, 65.) Under "**SECTION V – REPORTING AND NOTICE, A. NOTICE OF CLAIMS**," the Policy provides:

>    With respect to any purchased Coverage Part:
>    1.  As a condition precedent to their rights under such Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after an **Executive Officer** or an employee of the **Company's** office of general counsel, risk management or functionally equivalent departments, if any, first learns of such **Claim**, but in no event later than: (i) ninety (90) days after expiration of the **Policy Period**; or (ii) the expiration of the **Extended Reporting Period**, if exercised.
>    2.  The **Insureds** shall include within any notice of **Claim** a description of the **Claim**, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the claimants, and the date and manner in which the **Insureds** first became aware of the **Claim**.

(Policy at 9-10.)

In the Motion, Evanston argues summary judgment is appropriate on Evanston's second claim and the Counterclaim as to the Physician Defendants because the Physician Defendants

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

did not comply with the Policy's reporting requirements, as "[t]he only notice of Ghazal's claims to Evanston was on behalf of HRC Fertility, and that entity alone." (Mot. at 16-20.)  The court agrees.  The Policy is "a 'claims-made policy,'" under which "an insurer is responsible for any loss resulting from claims made during the policy period," in contrast to "the traditional 'occurrence policy,'" under which "an insurer is responsible for any loss resulting from acts that occur during the policy period." *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991).  Under claims-made policies, insureds must comply with notice provisions in the policy in order to receive coverage.  *See id.*  Here, the evidence shows that the Physician Defendants did not comply with the Policy's notice provisions.  (*See* Policy at 9-10.)  Rather, the notice Evanston received of the Ghazal Claim was on behalf of HRC Fertility alone.  (SUF ¶¶ 2, 6-10.)

Defendants do not meaningfully dispute this fact.  Rather, Defendants argue that "Evanston was [] put on ***constructive notice*** of the claim on behalf of the Physician Defendants, based on HRC Fertility's timely reporting of the claim." (Opp. at 12.)  The court is not persuaded that Defendants' argument precludes summary judgment.  The Policy requires, "[a]s a condition precedent to their rights under such Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after" a qualified person "first learns of such Claim, but in no event later than: (i) ninety (90) days after expiration of the **Policy Period**; or (ii) the expiration of the **Extended Reporting Period**, if exercised." (Policy at 9.)  The Policy therefore makes *actual* "notice an element of coverage." *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 888 (1992); *see, e.g.*, *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, 2018 WL 4859948, at *3 (C.D. Cal. June 19, 2018), *aff'd,* 787 F. App'x 469 (9th Cir. 2019) ("[I]n order for [the insured] to satisfy a condition precedent to coverage it had to give [the insurer] written notice of the claim at a specific address set forth in the terms of the Policy," and the insurer "was under no duty to investigate [the insured's] involvement in the Beltran Suit unless it received the written notice that the Policy required.").  Moreover, "[w]ithout having received the written notice which would trigger coverage under [this] provision, the insurer had no duty to inquire on its own of circumstances that might give rise to a claim, and it cannot be charged with constructive notice of circumstances it had no duty to investigate." *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal. App. 4th 963, 977-78 (1997) (citation omitted).  Because the evidence shows the Physician Defendants did not comply with the Policy's reporting requirements, the Physician Defendants

**CIVIL MINUTES – GENERAL**                                                    **11**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

cannot receive coverage. *See EurAuPair Int'l*, 2018 WL 4859948, at *3 (granting motion to dismiss, and rejecting constructive notice argument, where "EurAuPair has not and cannot allege that it complied with the express notice requirements set forth in Policy No. 1").

This result makes sense. "Claims-made policies are essentially *reporting* policies. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This [courts] cannot and will not do." *Pac. Emps. Ins. Co. v. Superior Ct.*, 221 Cal. App. 3d 1348, 1358-59 (Ct. App. 1990) (citation modified) (quoting *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512, 515 (Fla. 1983)); *see also KPFF, Inc.*, 56 Cal. App. 4th at 978 (explaining that applying constructive notice concepts in this situation "would transform the limited coverage, which the parties bargained for, into something much broader and more ill-defined"); *Helfand*, 10 Cal. App. 4th at 888 ("Subjecting this policy to the notice-prejudice rule would materially alter the insurer's risk. The hallmark of a 'claims made' policy is that exposure for claims terminates with expiration or termination of the policy, thereby providing certainty in gauging potential liability which in turn leads to more accurate calculation of reserves and premiums. The benefit to the insureds is that the insurer can make coverage more available and cheaper than occurrence policies."). Indeed, "an insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Pac. Emps. Ins. Co.*, 221 Cal. App. 3d at 1359 (citation modified).

Defendants also argue that summary judgment is not appropriate on this basis, and "Evanston's argument is preposterous, given that it has only treated the claim as one claim, which it concedes was properly made and reported during the Policy period," noting that "Evanston even filed (and won) a motion for partial judgment on the pleadings in which it sought a ruling that one single policy limit applies because the Ghazal Action is one lawsuit that constitutes a single claim." (Opp. at 11.) But again, the Policy plainly provides that each Insured must provide written notice of the Claim as a condition precedent to coverage. (Policy at 9-10.) As explained, the evidence shows the Physician Defendants failed to comply with the Policy's reporting requirements. (*See id.*) To find that the Physician Defendants may

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                              Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*
═══════════════════════════════════════════════════════════════

nevertheless receive coverage would impermissibly rewrite the Policy and alter the coverage for
which the parties bargained. *See Pac. Emps. Ins. Co.*, 221 Cal. App. 3d at 1358-59; *KPFF, Inc.*,
56 Cal. App. 4th at 978; *EurAuPair Int'l, Inc.*, 2018 WL 4859948, at *3.

In summary, the court concludes as a matter of law that coverage under the Policy for the
Physician Defendants with respect to the Ghazal Action is barred because the Physician
Defendants did not comply with the Policy's reporting requirements. Accordingly, the court
**GRANTS** the Motion as to Evanston's second claim and the Counterclaim as to the Physician
Defendants (described in the Counterclaim as the "Individual Counterclaimants").

### B.    "Insured Persons," "Insureds," or "Insured Capacity": Evanston's First Claim and the Physician Defendants' Counterclaim

Evanston's first claim seeks a declaratory judgment that Evanston "has no duty to defend
and no duty to pay **Claim Expenses** on behalf of the Physician Defendants under the Evanston
Policy for the Claim asserted against them in the Ghazal Suit on the grounds that, among other
reasons, they do not qualify as **Insured Persons, Insureds,** and/or are not being sued in an
**Insured** capacity in that matter." (FAC ¶¶ 49, 52-53, 57.) The first cause of action in
Defendants' Counterclaim "seek[s] a judicial declaration confirming that Evanston's
contentions" that Defendants do not qualify as "**Insured Persons**" under the Policy "are wrong
and that [Defendants'] contentions are correct, that Evanston must defend the [Physician
Defendants] in the Underlying Action." (CC ¶¶ 29-32.)

The Policy's D&O Coverage Part defines **Insured Person** to include:

> Any natural person who was, now is or shall during the **Policy Period**
> become a duly elected or appointed director, trustee, governor,
> **Manager**, officer, advisory director, or member of a duly constituted
> committee or board of the **Company** or their functional equivalent.

(Policy at 34.) The D&O Coverage Part further states: "**Insured**, whether in the singular or
plural, means the **Insured Persons** and, solely with respect to INSURING AGREEMENTS B.,

**CIVIL MINUTES – GENERAL**                                                    **13**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

INSURING AGREEMENTS C. AND INSURING AGREEMENTS D., the **Company**.” (*Id.* at 35.)

The EPL Coverage Part defines **Insured Person** to include:

> Any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager**, officer, **Employee** (including employed lawyers solely in their capacity as an **Employee**), advisory director, or member of a duly constituted committee or board of the **Company**, or their functional equivalent.

(*Id.* at 41.) The EPL Coverage Part further states: “**Insureds**, whether in the singular or plural, means the **Insured Persons** and the **Company**.” (*Id.*)

In addition, the Policy’s General Terms and Conditions state:

> **Manager** means, with respect to any **Company** that is a limited liability company, any natural person who was, now is or shall during the **Policy Period** become such **Company**’s manager, managing member, member of the board of managers or equivalent executive.

(*Id.* at 17.) Finally, “**Company** means, collectively, the **Parent Company** and its **Subsidiaries**, including any such organization as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.” (*Id.*)

In the Motion, Evanston argues that “[t]he Physician Defendants are not entitled to coverage for the Ghazal Suit because they are being held liable for alleged wrongdoing on behalf of uninsured entities,” as “the Ghazal Suit does not seek to hold the Physician Defendants liable for their acts committed on behalf of Evanston’s **Insured**, HRC Fertility.” (Mot. at 19.) Rather, Evanston maintains “Frederick is being sued in the Ghazal Suit in her capacity as an owner, member, shareholder and/or employee of uninsured entities: HRC,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                                  Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*
_____

Frederick Corp., HRC Investment Cayman LLC."; "Frederick Corp. is alleged to hold ownership interests in uninsured entities: HRC, HRC Investment Cayman LLC and HRC Investment Holding, LLC"; "Potter is being sued in his capacity as an owner, member, shareholder and/or employee of uninsured entities: HRC, Potter Corp., HRC Investment Cayman"; "Potter Corp., an uninsured entity, is alleged to hold ownership interests in HRC Investment Cayman and HRC Investment Holding"; Kolb is being sued in his capacity as an owner, member, shareholder and/or employee of uninsured entities: HRC, Kolb Corp., HRC Investment Cayman, HRC Investments"; and "Wilcox is being sued in his capacity as an owner, member, shareholder and/or employee of uninsured entities: HRC, Wilcox Corp., HRC Investment Cayman, Wilcox Corp., and HRC Investments." (*Id.*) Simply put, Evanston argues that the Policy's "**Insured**" is HRC Fertility, but the Ghazal Complaint alleges the Physician Defendants committed wrongs on behalf of entities other than HRC Fertility. (*See id.*; Reply at 3 ("Th[e Ghazal Action] Complaint's allegations are plain and clear that these individuals are being sued for alleged wrongful acts related to HRC ***Medical*** and other uninsured parties.").)

However, the court does not find as a matter of law that the Physician Defendants do not qualify as an "**Insured**" or "**Insured Persons**" under the Policy or that they were not sued in an **Insured** capacity. In particular, the court does not find that the Ghazal Action Complaint makes it as "plain and clear" as Evanston argues that the Physician Defendants' alleged wrongdoing was committed solely on behalf of HRC Medical. (*See generally* Salem Decl. Ex. 12 ("Ghazal Action Complaint" or "GA Compl.").) For example, one of the wrongful schemes the Ghazal Action Plaintiffs alleged Dr. Ghazal "was terminated from HRC because she refused to participate in, and raised concerns about the legality of," was "HRC's global and domestic prescription drug programs, in partnership with MDR Pharmacy." (GA Compl. ¶ 43.) According to the Ghazal Action Plaintiffs, under that scheme, "[i]n exchange for [] heavily discounted drugs provided by MDR Pharmacy to HRC [Medical] in connection with its treatment of international patients, HRC [Medical] agreed to send all of its domestic patients to MDR Pharmacy for their fertility drugs and use MDR Pharmacy as its exclusive pharmacy." (*Id.*) The Ghazal Action Complaint alleges that HRC Fertility participated in that scheme by, among other conduct, "mandat[ing] that all case coordinators send domestic patients to MDR Pharmacy," "track[ing] HRC [Medical]'s treatment of domestic patients to ensure MDR Pharmacy obtained those referrals," and "dictat[ing] that if an HRC physician or employee was

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                              Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

_____

not sending a patient to MDR Pharmacy, the reason for not doing so had to be documented in the medical record." (*Id.*)  The Ghazal Action Plaintiffs allege "Dr. Ghazal was terminated by HRC [Medical] at the behest of defendants Frederick, Potter and Roy in retaliation for her refusal to participate in HRC [Medical]'s illegal practices and/or her complaints about such illegal practices," including the prescription drug practices with MDR Pharmacy.  (*Id.* ¶ 41.) The Ghazal Action Plaintiffs further allege that both HRC Medical *and* HRC Fertility (and HRC Fertility's CEO) "pressured Dr. Ghazal to have her patients purchase drugs through the drug program, both in person and through multiple emails in the months immediately prior to Dr. Ghazal's termination." (*Id.* ¶ 45.)  Considering these allegations as a whole, and also considering similar allegations in the Ghazal Action Complaint regarding other alleged schemes, and drawing all reasonable inferences in Defendants' favor, the court does not find that no reasonable jury could conclude based on these allegations that the Physician Defendants committed wrongful acts on behalf of HRC Fertility.  *See In re Oracle Corp.*, 627 F.3d at 387; *Anderson*, 477 U.S. at 248 (stating "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

However, the court does find summary judgment is appropriate on this issue as to the corporate Physician Defendants, Frederick Corp. and Potter Corp.  (*See* Reply at 4-5.)  No reasonable jury could conclude that those entities are "natural person[s]" who could qualify as "**Insured Persons**" under either the EPL Coverage Part or the D&O Coverage Part, (Policy at 35-36, 41), or that those entities are HRC Fertility or subsidiaries of HRC Fertility that could qualify as the "**Insured**," (*id.* at 17, 35, 41).  *See Anderson*, 477 U.S. at 248.

Accordingly, the court **GRANTS** summary judgment on Evanston's first claim and the Counterclaim's first cause of action as to Frederick Corp. and Potter Corp. and **DENIES** summary judgment on Evanston's first claim and the Counterclaim's first cause of action as to the remaining Physician Defendants.

**CIVIL MINUTES – GENERAL**                                                                      **16**

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

---

**C.    Defendants' Cooperation Duties: Evanston's Fourth and Fifth Claims and All Causes of Action in the Counterclaim**

Evanston's fourth claim seeks a declaration that "[c]overage is barred under the Evanston Policy for the Defendants with respect to the Ghazal Suit's cause of action HRC Fertility for Negligent Interference With Prospective Economic Advantage" because this claim "was added by the Ghazal plaintiffs not as a result of any newly discovered facts or law, but solely to manipulate the pleadings at the last minute in an attempt to trigger coverage under the Evanston Policy." (FAC ¶¶ 78, 81.) Evanston's fifth claim seeks a declaration that "coverage is barred and/or vitiated under the Evanston Policy" because "Defendants breached [their] cooperation duties, and the duty of good faith and fair dealing, by failing to comply with the Evanston Policy's requirements, as well as by acting in concert with the Ghazal Suit Plaintiffs to manipulate the pleadings in the Ghazal Suit in an attempt to trigger coverage under the Evanston Policy where none would otherwise exist." (*Id.* ¶¶ 85-86.) **SECTION IV.B** of the Policy, titled "Cooperation," states that "the **Insureds** agree to provide the Insurer with all information, assistance, and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery." (Policy at 23.) This cooperation includes submitting to examinations under oath, attending court proceedings, and "assist[ing] in effecting settlement, and securing and giving evidence." (*Id.*)

Cooperation provisions "enable the insurer to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to facts, material to its rights, to enable it to decide upon its obligations, and to protect itself against false claims"; "[w]ithout such cooperation and assistance the insurer is severely handicapped and may in some instances be absolutely precluded from advancing any defense." *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 975-76 (2000) (citation modified). "Where an insured violates a cooperation clause, the insurer's performance is excused if its ability to provide a defense has been substantially prejudiced." *Id.* at 976; *see also Streeter v. USAA Gen. Indem. Co.*, 2023 WL 8449203, at *1 (9th Cir. Dec. 6, 2023), *cert. denied,* 144 S. Ct. 2660 (2024) ("Because this cooperation can fairly be characterized as a duty, the failure to comply can result in the loss of coverage under the policy.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

---

"If a court finds as a matter of law that the insured has breached its duty to cooperate and the insurer was prejudiced by that breach, the insurer is entitled to summary judgment on the insured's breach of contract claim." *Novalk, LLC v. Kinsale Ins. Co.*, 2025 WL 896458, at *3 (S.D. Cal. Mar. 21, 2025). "Generally, a determination as to whether an insured breached its duty to cooperate and whether an insurer was prejudiced by that breach are questions of fact." *Id.*; *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 857 (N.D. Cal. 2011) (same). *Id.* at 1062. "However, if the facts of the case are 'uniformly unfavorable' to one party, breach of the duty to cooperate may be determined as a matter of law." *Novalk, LLC*, 2025 WL 896458, at *3.

In this case, the court does not find as a matter of law that Defendants breached the duty to cooperate and Evanston was prejudiced by the breach. *See id.* Rather, the court finds that this is the ordinary case in which whether there was a breach of the duty to cooperate and whether Evanston was prejudiced "are questions of fact." *Id.* In the Motion, Evanston argues that "Evanston followed up nearly twenty times to HRC Fertility during the January 25, 2021 to June 16, 2023 period regarding its failure to provide necessary documents, substantive claim evaluations, and information needed to conduct its investigation, address payment of defense costs, and assess potential indemnity," and that "[t]hese failures substantially impaired Evanston's ability to investigate the validity of the Claim in light of the potential damages, and to evaluate coverage under the Policy, including as to settlement." (Mot. at 20-21.) In Opposition, Defendants argue that there are genuine disputes of fact regarding both whether the duty to cooperate was breached and whether Evanston was prejudiced by the breach. (Opp. at 3, 15-17.) For example, Defendants offer evidence that C&B provided Evanston status reports on at least March 12, 2021, April 12, 2021, May 24, 2021, August 12, 2021, October 7, 2021, October 18, 2021, November 17, 2021, and March 28, 2022. (Dkt. 141-2 (Declaration of Edward Susolik) Exs. 82-89.)

Although a reasonable juror could certainly conclude that there was a breach of the duty to cooperate, the court does not find that no reasonable jury could conclude otherwise, especially because "[t]o satisfy the duty to cooperate, an insured need not submit every item of information that the insurer has requested," but rather "an insured can show substantial performance of the duty to cooperate by demonstrating that there was enough evidence in

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                          Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

"whatever form and however acquired that the insurer would act unreasonably if it refused to pay the claim." *Novalk, LLC*, 2025 WL 896458, at *3 (citation modified); *see Anderson*, 477 U.S. at 248. Accordingly, the Motion on the basis of the duty to cooperate is **DENIED**.

   **D.    Good Faith Regarding Settlement: The Counterclaim's Third Cause of Action**

   In the Counterclaim's third cause of action, Defendants allege that Evanston tortiously breached the implied covenant of good faith and fair dealing by, among other conduct, "wrongfully and unreasonably with[o]ld[ing] benefits due," including by "[f]ailing and refusing to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of the claim, though liability became reasonably clear." (CC ¶¶ 38-49.)

   In the Motion, Evanston argues that summary judgment is appropriate on this cause of action because Evanston did not act in bad faith under the circumstances presented here, where "HRC Fertility demanded that Evanston pay its $1 million Policy limit within three business hours of being informed of the June 15, 2023, $2.5 million demand's expiration," with the demand "contingent on Evanston waiving its coverage rights, made with the incorrect assumption and condition that Evanston would later litigate payment of C&B's fees under another purported $1 million Policy limits, and c[oming] on the heels of a newly added negligence claim against HRC Fertility, for which *Cumis* counsel had not, prior to the demand's expiration, provided a substantive analysis," and "Evanston asked for one business day and one weekend to consider the demand plus the coverage implications of the newly added negligence claim." (Mot. at 21-22 (citations omitted).) In Opposition, Defendants argue that Evanston's arguments are "contrived excuse[s] for its unreasonable refusal to settle," contending that "*Cumis* counsel provided numerous reports to Evanston and complied with Evanston's litigation guidelines, even providing a 17-page pre-litigation report on May 10, 2023," and that "Evanston's true reasoning behind its refusal to settle was, and has always been, focused on assessing its coverage defenses, including billing, allocation and defense issues." (Opp. at 19.)

   "A claim for 'wrongful refusal to settle' requires proof the insurer unreasonably failed to accept an otherwise reasonable offer within the time specified by the third party for acceptance." *Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 434 (2014), *as modified*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                                     Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

*on denial of reh'g* (Nov. 12, 2014). "[O]rdinarily whether the insurer has acted unreasonably, and hence in bad faith, in rejecting a settlement offer is a question of fact to be determined by the jury." *Walbrook Ins. Co. v. Liberty Mut. Ins. Co.*, 5 Cal. App. 4th 1445, 1454-55 (1992) (citation modified). "This follows from the nature of the issue: A determination respecting the presence or absence of good faith involves an inquiry into motive, intent and state of mind. Conclusions concerning such matters, in most cases, are founded upon inferences." *Id.* (quotation omitted). Indeed, "[a] trier of fact on the issue of bad faith in a subsequent action must make a wide-ranging inquiry into such criteria as motive, knowledge, experience, and the ability to prophesy." *Camelot by the Bay Condo. Owners' Assn. v. Scottsdale Ins. Co.*, 27 Cal. App. 4th 33, 48 (1994) (citing *Walbrook*, 5 Cal. App. 4th at 1456-57). "The question becomes one of law only when, because there are no conflicting inferences, reasonable minds could not differ." *Walbrook*, 5 Cal. App. 4th at 1454-55; *see also McGranahan v. GEICO Indem. Co.*, 2025 WL 869306, at *1 (9th Cir. Mar. 20, 2025) ("The reasonableness of an insurer's conduct is a question of law where evidence is undisputed and only one reasonable inference can be drawn from the evidence.") (quotation omitted).

In this case, the court finds that "reasonable minds could not differ," *Walbrook*, 5 Cal. App. 4th at 1454-55, and "only one reasonable inference can be drawn from the evidence," *McGranahan*, 2025 WL 869306, at *1. The record shows that on June 12, 2023, the arbitrator permitted the Ghazal Action Plaintiffs to amend their complaint to add a claim for negligent interference with prospective economic advantage against HRC Fertility. (SUF ¶ 50.) Three days later, and before Evanston received any analysis regarding the viability of or possible exposure on the newly-added claim, the Ghazal Action Plaintiffs demanded $2.5 million to settle, with "any payment by Evanston . . . contingent on Evanston waving its right to seek reimbursement of the settlement payment from HRC." (Salem Decl. Ex. 37.) At 6:23 p.m. on June 15, 2023, C&B advised that the settlement demand expired at 9:00 a.m. the next day. (SUF ¶ 54.) Evanston did not accept or reject the offer, but rather requested more time. (*See id.* ¶ 59.) The Ghazal Action Plaintiffs rejected C&B's request, made for Evanston's benefit, that the time to respond to the settlement offer be extended. (Salem Decl. Ex. 43.)

Under these circumstances, the court determines that no reasonable jury could conclude based on the evidence that Evanston's failure to accept the Ghazal Action Plaintiffs' settlement

**CIVIL MINUTES – GENERAL**                                                            **20**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

offer overnight constituted bad faith.  *See Anderson*, 477 U.S. at 248; *see, e.g.*, *Hicks v. Dairyland Ins. Co.*, 441 F. App'x 463, 465-66 (9th Cir. 2011) ("The district court properly concluded that a demand made under these circumstances was not a 'reasonable settlement offer' within the meaning of *Miller* because the demand established an unreasonable time limit and did not afford Dairyland sufficient information with which to evaluate the claim.").  In reaching this conclusion, the court considers all of the circumstances, and finds three interrelated circumstances are critical: first, the overnight time limitation on the Ghazal Action Plaintiffs' offer; second, the limited information Evanston had regarding the viability of and exposure on the Ghazal Action Plaintiffs' negligence claim, which had been added only three days before the settlement offer was made; and third, the fact that the settlement offer was contingent on Evanston waiving the right to seek reimbursement of the settlement payment from HRC Fertility.  (*See* SUF ¶¶ 50, 59; Salem Decl. Exs. 37, 43.)  "A carrier is subject to tort liability for bad faith only where it unreasonably fails to provide benefits due under the policy or the law.  In particular, insurers are entitled to a reasonable period of time to analyze a situation requiring a coverage decision."  *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1010 (1998), *as modified* (Mar. 27, 1998) (citations omitted); *see also Graciano*, 231 Cal. App. 4th at 434 ("[W]hether the insurer has satisfied its duty to seek to settle in protection of its insured must be measured in the light of the time limitation which plaintiff had placed on her offer.") (internal quotation omitted).  Moreover, "[w]hether an insurer's decision was reasonable 'is necessarily dependent on the amount of information at the insurer's disposal at the time of the settlement decision, when considering the totality of the circumstances."  *McGranahan*, 2025 WL 869306, at *1 (9th Cir. Mar. 20, 2025) (quoting *Spradlin v. GEICO Indem. Co.*, 2019 WL 6481304, at *19 (C.D. Cal. Aug. 1, 2019)).  Consistent with this principle, "[a]n insurer does not act unreasonably where the insurer neither accepts nor rejects a time-limited settlement offer and instead suggests additional time to respond to the offer, so that the insurer can continue to investigate, evaluate the claimant's claim, or consult with the insured party regarding the settlement offer.  *Spradlin*, 2019 WL 6481304, at *19 (citing *Graciano*, 231 Cal. 4th at 434).  "[A]lthough the question of whether [Evanston] acted reasonably is one for the jury based on a consideration of all the relevant circumstances, no reasonable jury would conclude that [Evanston] acted in bad faith by refusing to accept [the Ghazal Action Plaintiffs' June 25, 2023, settlement offer]" because Evanston's decision to not accept or reject the offer but rather seek more time "due to the unavailability of any" information regarding the viability

**CIVIL MINUTES – GENERAL**                                          **21**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                          Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

of or exposure on the newly-added negligence claim and the extremely short time limitation placed on the offer "was reasonable as a matter of law, based on the undisputed factual record and the only reasonable inference that can be drawn from that record." *Spradlin*, 2019 WL 6481304, at *24; *see Anderson*, 477 U.S. at 248; *see also McGranahan*, 2025 WL 869306, at *1 (affirming district court's grant of summary judgment to insurer when, "[b]ecause the medical records and bills were essential to evaluating McGranahan's settlement offer, Geico did not act unreasonably when neither accepting nor rejecting the time-limited settlement offer so that Geico could continue to investigate, evaluate the claimant's claim, or consult with the insured party regarding the settlement offer.") (internal quotation omitted); *McDaniel v. Gov't Emps. Ins. Co.*, 681 F. App'x 614, 616 (9th Cir. 2017) ("GEICO is entitled to summary judgment because no reasonable jury could conclude that GEICO unreasonably refused to settle. . . . The only inference based on undisputed facts is that GEICO's failure to accept McDaniel's policy limits settlement offer on or before the September 6, 2009 deadline was caused by negligence," and "there is no theory under which McDaniel can demonstrate that GEICO acted with the requisite degree of culpability to have unreasonably refused to settle."); *Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.*, 562 F. Supp. 3d 563, 573 (C.D. Cal. 2021) ("In sum, no reasonable juror could conclude that Defendant acted in bad faith by refusing to accept Martinez's December 2016 settlement demand" when the defendant rejected a settlement offer without sufficient information to justify accepting it).

Accordingly, the Motion is **GRANTED** as to the Counterclaim's third cause of action insofar as that cause of action asserts that Evanston tortiously breached the implied covenant of good faith and fair dealing by failing to accept the Ghazal Action Plaintiffs' June 15, 2023, settlement offer. However, the court observes that the Counterclaim's bad faith cause of action is based not only on Evanston's conduct with relation to the June 15, 2023, settlement offer, but also on other conduct of Evanston's not addressed in the Motion. (*See* Counterclaim ¶ 43 a.-i.) Accordingly, to the extent the Motion seeks summary judgment on the Counterclaim's third cause of action concerning any of Evanston's conduct outside the handling of the June 15, 2023, settlement offer, the Motion is **DENIED**.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                                   Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

_____

**E.      Right of Allocation of Claim Expenses and Loss: Evanston's Third Claim**

Evanston's third claim seeks a declaration that "Evanston is entitled to an allocation of any and all uncovered **Claim Expenses, Loss,** and/or all other uncovered sums under **SECTION VIII – ALLOCATION** of the Evanston Policy with respect to the Claim asserted in the Ghazal Suit."  (FAC ¶ 74.)  This includes, according to Evanston, "sums comprising the $4.5 million settlement amount [that] are uncovered under the Policy": "$800,000 is allocated to breach of contract claims, which is barred under: (a) the D&O Coverage Part's Exclusion L.1 barring coverage for, in relevant part, any 'Claim for any actual or alleged liability of the Company under any written or express contract or agreement'; and (b) Exclusion I.3 under the EPL Coverage Part barring coverage for Loss which constitutes amounts owing under, or assumed by, the Insured pursuant to a written or other express contract or agreement with the Company'"; "$900,000 is allocated to claims involving physical injury or illness, which is barred under the D&O Coverage Part's Exclusion F barring coverage for bodily injury"; "$1 million is allocated to claims of defamation, emotional distress and other non-wage and non-physical injury claims, sums also barred under: (a) the D&O Coverage Part's Exclusion F barring coverage for mental anguish and emotional distress; and (b) subpart (2) in Exclusion L of the D&O Coverage Part barring coverage for Personal Injury, defined as defamation."  (Mot. at 25 (record citations omitted).)

**Section VIII – ALLOCATION** of the Policy states that "if a **Claim** is made against both **Insureds** who are afforded coverage for such **Claim** and any other party(ies) who is(are) not afforded coverage for such Claim, the Insurer shall have no obligation with regard to legal fees and expenses, settlements, or judgments incurred by any such other party(ies) who is(are) not afforded coverage for such **Claim**."  (Policy at 26-27.)

The court finds that Evanston has not adequately demonstrated that Evanston is entitled to the relief it seeks based on the Policy's allocation provision.  Accordingly, the Motion is **DENIED** insofar as it seeks a judicial declaration regarding a right of allocation.

**CIVIL MINUTES – GENERAL**                                                       **23**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:23-cv-00882-FWS-KES                     Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

## IV.    Disposition

For the reasons set forth above, the Motion is **GRANTED IN PART AND DENIED IN PART**.

The court **GRANTS** the Motion as to Evanston's second claim for relief, and **DECLARES** that coverage is barred under the Evanston Policy for the Physician Defendants with respect to the Ghazal Suit because the relevant Insuring Agreement terms of the Evanston Policy and those set forth under **SECTION V – REPORTING AND NOTICE** are unmet. The court **DISMISSES WITH PREJUDICE** the Counterclaim insofar as it is brought by the Physician Defendants.

The court **GRANTS IN PART** the Motion as to Evanston's first claim for relief, and **DECLARES** that Evanston has no duty to defend and no duty to pay Claim Expenses on behalf of Frederick Corp. and Potter Corp. under the Evanston Policy for the Claim asserted against them in the Ghazal Suit on the grounds that Frederick Corp. and Potter Corp. do not qualify as **Insured Persons**, **Insureds**, and/or are not being sued in an **Insured** capacity in that matter.

The court **GRANTS IN PART** the Motion as to the Counterclaim's third cause of action based on the allegation that Evanston tortiously breached the implied covenant of good faith and fair dealing by failing to accept the Ghazal Action Plaintiffs' June 15, 2023, settlement offer.  The court therefore **DISMISSES WITH PREJUDICE** the Counterclaim's third cause of action based on the allegation that Evanston tortiously breached the implied covenant of good faith and fair dealing by failing to accept the Ghazal Action Plaintiffs' June 15, 2023, settlement offer.

The court **DENIES** the Motion in all other respects.

The court **ORDERS** the parties to meet and confer and participate in good faith in a settlement conference, which the court further **ORDERS** be conducted **in-person** on or before **July 10, 2025**.  (*See* Dkt. 139.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00882-FWS-KES                    Date: June 12, 2025
Title: Evanston Insurance Company v. Jane L. Frederick, *et al.*

If the case does not resolve as a result of the in-person settlement conference, the court **ORDERS** the parties to meet and confer and file a joint status report on or before **July 21, 2025**, concerning what claims or portions of claims in the FAC and/or Counterclaim remain for trial.  All other dates and orders in the April 3, 2025, Revised Scheduling Order, (Dkt. 139), remain in full effect.